AMELIA P. DEWITT ET AL. *vs.* WILLIAM L. BISSELL.

First Judicial District, Hartford, January Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The ownership of a dam and water-privilege, with the rights incident thereto, constitutes property which has been favored by the law since the earliest times.

Whatever may be their respective legal rights, it is clearly error to enjoin the owner of a dam and water-privilege at the outlet of a pond from drawing off any water at all during the summer months, at the instance of a summer resident owning land adjoining the pond,

DeWitt *v.* Bissell.

where it is apparent that a limited withdrawal of the water would not leave the exposed portions of the bed of the pond in such a condition as to injure the summer resident.

Upon the trial of the present case the defendant asked the court to rule that where, in the natural and necessary use of the pond in the summer months, it became essential to draw down the water so as to expose some portions of the bottom of the pond, a person who bought land and lived near the pond after it had been established and used, could not lawfully object to such use upon the ground that it caused bad odors to arise. *Held* that in unqualifiedly overruling this claim the trial court erred, and that this error so influenced other material conclusions as to vitiate the whole judgment, not only as respects an injunction but also as to damages.

Argued January 3d—decided March 9th, 1905.

ACTION to restrain the defendant from drawing off the water of a lake or pond during the summer season, thereby creating an alleged nuisance affecting the health of the plaintiff and the value of her premises, brought to the Superior Court in Litchfield County and tried to the court, *Elmer, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error, judgment reversed and cause remanded.*

The complaint alleges the following facts: On July 15th, 1897, the plaintiff was and ever since has been the owner of a piece of land adjoining and bordering upon the east shore of Long Pond, on which piece of land is a dwelling-house used by the plaintiff as a summer residence. At the outlet of said pond there is a dam claimed to be owned by the defendant, which maintains the water of said pond at a higher level than its natural level. From July 15th to October 1st in each of the years 1897, 1898 and 1899, and from July 15th to the commencement of this suit on September 18th in the year 1900, the defendant drew off the water of said pond, by raising the gate in said dam until a large area of the land which is covered by water when said pond is full was exposed, which exposed condition continued until October 1st in the years 1897, 1898 and 1899, when the defendant permitted said pond to fill up to its usual level as maintained by said

dam, and such exposed condition continued in 1900 until the commencement of this suit. When the water was thus drawn off, the land thus exposed to the sun produced offensive stenches, unhealthy to the plaintiff and other inmates of said house, rendering said house uninhabitable and constituting a nuisance. The defendant formerly operated a grist-mill, machine shop and foundry, with the water flowing from said pond, which grist-mill, etc., stood on a tract of land owned by the defendant below the outlet of said pond; but said mill, machine shop and foundry have been abandoned, and the defendant has put the water drawn from said pond, at the time above mentioned, to no beneficial use. The acts of the defendant in creating such nuisance have injuriously affected the health and comfort of the plaintiff and her family, and the value of the plaintiff's said land has been depreciated. The plaintiff has often requested the defendant to cease drawing off the water as aforesaid, but the defendant notwithstanding such requests has continued to so draw it off, and the plaintiff is without adequate remedy at law.

The prayer for relief asks an injunction restraining the defendant from drawing off the water below the level maintained by said dam when the gate therein is closed, from July 15th to October 1st in each year, and $5,000 damages.

The defendant's answer, after denying certain paragraphs of the complaint, sets up as a special defense to the plaintiff's cause of action as stated in the complaint, the following: " 1. The defendant, on the 15th day of July, 1897, was, and for more than twenty years prior thereto had been, and still is, the owner of the dam and water-privilege at the outlet of said Long Pond; and during all of said time was, has been, and still is, the owner and user of the water flowing therefrom; and during all of said time has been and still is entitled to the right to raise the water in said pond to the height of said dam, and to draw off and use all the water from said pond that would flow from the same. 2. Any and all acts of the defendant in raising and lowering the water of said Long Pond were done in the exercise of his

legal right as owner and user, as set forth in paragraph 1 of this defense."

The plaintiff, in her reply to the special defense, admitted so much of paragraph 1 as alleged that the defendant was on July 15th, 1897, and for more than twenty years prior thereto had been and still is the owner of the dam at the outlet of Long Pond, and denied the remainder of said paragraph and paragraph 2.

The judgment of the court finds for the plaintiff the issues of fact raised by the pleadings, and adjudges that the defendant be perpetually enjoined from drawing off the water of Long Pond from July 15th to October 1st in each year, and that the plaintiff recover of the defendant $100 damages.

*Charles E. Perkins* and *J. Henry Roraback*, for the appellant (defendant).

*Donald T. Warner*, with whom were *Hubert Williams* and *Howard F. Landon*, for the appellee (plaintiff).

HAMERSLEY, J. It is alleged by the defendant and admitted by the plaintiff, that the defendant is and for more than twenty years last past has been the owner of the dam, which is found to have existed for nearly a hundred years, and to have been used by its owners for the purpose of storing water to the full capacity of the dam and drawing off the water thus stored as occasion required. It is also found that during the years mentioned in the complaint the defendant has, from July 15th to October 1st, substantially drawn off all the water stored for use by the dam, i. e., to the depth of about four feet at its gate; that when the water is drawn off to this extent the bottom of the pond at several points is exposed to the sun and air; that one of the portions thus exposed is opposite land owned by the plaintiff, and the exposure of this portion has caused an appreciable injury to the plaintiff's said property, for which injury the defendant is liable. It is not found that drawing off the water to the depth of two feet would cause this injury, and it plainly

appears that drawing off the water to some extent might not harm the plaintiff. The judgment perpetually enjoins the defendant against any exercise of his admitted right to draw off the water during the periods mentioned, although some exercise of that right can work no injury to the plaintiff, and for this reason the judgment is plainly erroneous.

It appears that the defendant is the owner of a dam and water-privilege at the outlet of Long Pond, and this property includes the power of storing the water flowing through the land on which the dam stands, to the capacity of the dam, and of letting the water flow through its open gates as the owner may desire; and includes that qualified ownership in the water stored which the law recognizes. This property is subject to the rights belonging to other riparian owners as owners of the land, and to their rights acquired by appropriation or contract, but is in other respects similar to any property held in absolute ownership.

It appears that the plaintiff in 1894 purchased a piece of land adjoining and bounded by the shore of Long Pond. On this land the plaintiff shortly after its purchase built a house for a summer residence. The real substance of the plaintiff's cause of action, as stated in the complaint and determined by the court, is this: The uncovered condition of Long Pond in the immediate neighborhood of the plaintiff's house results in the private nuisance described in the complaint, namely: offensive stenches unhealthy to the plaintiff and other inmates of her house, which injuriously affect the value of her land; this uncovered condition of the pond is caused by the defendant's act in drawing off the water stored by his dam, and the defendant is therefore liable, whether owner of the dam or not, to the plaintiff for the injury caused by this nuisance. The ultimate conclusion of the court is this: the defendant drew off the water of Long Pond, as alleged, and such acts constituted and created a nuisance and entitled the plaintiff to damages on account of the appreciable injury thereby caused her property.

Upon the trial the defendant claimed and asked the court to rule that the law is so that where, in the natural and nec-

essary use of a mill pond, it is necessary in the summer months so to draw down the water as to expose some portions of the bottom of the pond, persons who purchase property and live near the pond after it has been established and used cannot object to such use on the ground that bad odors arise from such use. The court unqualifiedly overruled this claim, and in doing so plainly erred. *Bierce* v. *Sharon Electric Light Co.*, 73 Conn. 300 ; *State* v. *Sunapee Dam Co.*, 70 N. H. 458. We think this error was material and seriously injured the defendant.

The conclusion of the court subjects the defendant's property to diminution or destruction, because its continued existence is inconsistent with the full enjoyment by the plaintiff of her property, and because when such inconsistency exists between property such as the defendant's, i. e., a dam and water-privilege, and property such as the plaintiff's, that is, land in the neighborhood of a mill and water-privilege, the former property must be held and enjoyed in subordination to the latter. It is evident that in reaching such a conclusion the law determining the character and incidents of the defendant's property should be accurately understood and correctly applied. The owner of land on both sides and bed of a natural stream of water not navigable may erect a dam to create power to operate mills and machinery ; he cannot do this so as to interfere with the right of proprietors of lands below to the natural flow of the water, nor so as to throw back the water upon the lands of those above without their consent; but, subject to these limitations, he may detain the water by a dam so as to create an artificial pond or enlarge a natural one, and use the water thus stored for his own purposes. He may open his gates and use the water a few miles below as well as at the outlet of the dam. He may lease or grant the water to a lower riparian proprietor, and may use the water for any purpose, provided he does not thereby interfere with the rights of other proprietors either above or below him. Such a dam and water-privilege, with its incidental rights, constitutes property favored by the law since earliest times. *Hol-*

*yoke Co.* v. *Lyman,* 15 Wall. 500; *Smith* v. *Agawam Canal Co.,* 2 Allen, 355, 356; *Whittier* v. *Cocheco Mfg. Co.,* 9 N. H. 454, 458; *Nuttall* v. *Bracewell,* L. R. 2 Exch. 1; *Miner* v. *Gilmour,* 33 Law Times, 98. Not only has such property always been favored by the public policy of this State, but in later years the power of eminent domain has been pushed to its limits in authorizing the acquirement of such property through proceedings for condemnation. Assuming for the moment that such property may become by the mere fact of its existence the occasion of a private nuisance injurious to the property of neighboring landowners, so as to make its owner liable in damages to such landowners, especially when he is chargeable with malicious or wanton disregard of their interests, it is evident that in determining the question of such liability all the facts and circumstances must be weighed in their relation to the law which establishes a dam and water-privilege as property and defines its incidents.

In the present case, it is apparent from the action of the court in overruling the defendant's claim of law, as well as from the whole finding, that the law relative to this peculiar property in a dam and water-privilege was not duly regarded in drawing the inferences from evidence and from the facts found, as well as in reaching the ultimate conclusion. The error complained of indicates that the material conclusions of the court may have been, and probably were, influenced to the detriment of the defendant by an erroneous view of the law, and must therefore be treated as vitiating the whole judgment.

It was suggested in argument, that the paragraph in the finding which states that in the year 1900, with his own hands, the defendant opened the gate of the dam and permitted the water stored to flow out to the same extent and with similar effect upon the plaintiff's property as in the former years mentioned, for no apparent purpose unless to assert his legal right to draw off the water as against any legal right in the plaintiff to have the water stored to the height of the dam, is sufficient to support at least that part of the judgment which gives the plaintiff damages.

It may be doubtful whether, upon the pleadings—the defendant having established his ownership of the dam and water-privilege, and that during the years 1897, 1898 and 1899 he had, in pursuance of his legal right, used the water drawn from the dam for operating mills located at a point two miles below its outlet and owned by the Sharon Electric Light Company, which paid him for the power—the court could properly render judgment only for the damage that might have been caused by this single act; but if it had the power it has not rendered such a judgment. The judgment for damages covers the injury to the plaintiff's property caused by the defendant's drawing off the water from his dam from 1897 to 1900, and it is evident that the erroneous view of the law which influenced the court in drawing inferences from testimony, and in reaching the conclusion that the property of the plaintiff was injured and the defendant was liable for this injury, affected its conclusion in respect to damage, including any that may have been suffered in the year 1900.

There is error; the judgment of the Superior Court is reversed and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.