DAVID ROYCE ET AL. v. JACQUELINE P. HENEAGE, FIRST SELECTMAN OF THE TOWN OF WESTPORT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 5, 1975—decision released March 23, 1976

388

*David Royce*, pro se, appellant (named plaintiff).
*Stanley P. Atwood*, for the appellee (defendant).

BOGDANSKI, J.  The plaintiffs brought an action against the first selectman of the town of Westport wherein they sought damages and an injunction to prohibit town officials from interfering with and removing a water dam located on their property. The defendant town[1] interposed a counterclaim to enjoin the maintenance of the dam.  The issues were found for the defendant, and the trial court enjoined the plaintiffs from maintaining the dam without first obtaining approval of the town.  From that judgment the plaintiffs have appealed, assigning error in the trial court's refusal to find certain facts,[2] in its finding facts without evidence, in its overruling their claims of law, and in the conclusions reached.

---

[1] The parties and the trial court have treated the town of Westport rather than the first selectman as the party defendant.

[2] The plaintiffs have made an extensive attack on the court's finding. They have assigned error in the court's refusal to find over twenty-five paragraphs of their draft finding, claimed to be admitted or undisputed.  Most of those paragraphs are merely more detailed statements of facts already incorporated in the finding, and their inclusion would not affect the result. *Bent* v. *Torell*, 139 Conn. 744,

In 1970, the plaintiffs purchased residential property on Main Street, Westport, through which a stream known as Willow Brook flows in a southerly direction. In 1971, adjacent property to the north was acquired by the O'Keefes. Willow Brook enters the plaintiffs' property at its northerly boundary after flowing through the O'Keefe land. In 1969, a small dam was constructed across Willow Brook on the plaintiffs' land five feet south of its northerly boundary line. The dam caused flooding on and erosion of the O'Keefe property. On numerous occasions, the O'Keefes requested the plaintiffs to remove the dam, but to no avail. The O'Keefes then complained to the selectmen of the town of Westport. On April 26, 1973, after town officials had viewed the premises, the plaintiffs were ordered to remove the dam pursuant to General Statutes § 52-461. The plaintiffs failed to comply with that order. On May 28, 1974, the town officials again ordered the plaintiffs to remove the dam "based on the provision of the Westport Waterway Protection Lines Ordinance, and §§ 52-461, 19-79, 19-86, and 19-87 of the Connecticut General Statutes." The plaintiffs again failed to comply. The dam was then apparently removed by town officials. Thereafter, the dam was rebuilt by the plaintiffs.

On July 24, 1974, the plaintiffs brought the present action, in which they alleged that the town erroneously relied upon General Statutes §§ 19-79, 19-86,

748, 97 A.2d 270. Other paragraphs, though not contradicted in testimony, involved questions of credibility for the trier. See *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274. No corrections can be made to the finding which would benefit the plaintiffs in presenting the questions of law which they wish reviewed. *State* v. *Carnegie,* 158 Conn. 264, 266, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455.

19-87, 52-461,[3] and the Westport Waterway Protection Lines Ordinance as authority for the order directing the removal of the dam. At the trial, however, in opposing the injunction sought by the plaintiffs, and in support of the injunction prayed for in its counterclaim, the town abandoned its reliance on the cited authorities except for § 52-461. The court found that all procedural requirements of § 52-461 were complied with and permanently enjoined the plaintiffs from constructing or maintaining the dam without first obtaining permission from the town. The plaintiffs now argue, as they did at the trial, that the provisions of General Stat-

---

[3] General Statutes §§ 19-79, 19-86 and 19-87 relate to nuisances which endanger the public health. The defendant made no reference to those statutes in its pleadings, and the trial court did not rely upon them in reaching its conclusions. General Statutes § 52-461 reads as follows:

"Sec. 52-461. OBSTRUCTION TO DRAINAGE. When any low lands have been drained by a ditch or current running thence in a natural course through the land of an adjoining proprietor and cannot advantageously be drained in any other course, and such drainage becomes obstructed, the owner of such low lands may give written notice to such adjoining owner to remove such obstruction so as to allow the water to pass off in its former accustomed manner. If such adjoining owner neglects to do so for thirty days after such notice, the owner of such low lands may call out two selectmen of the town wherein such lands lie, who shall first view the same, having first given written notice to all parties interested of the time of their meeting for such purpose and, if they find the drainage of such low lands necessary and proper and that such drainage has become obstructed as aforesaid, they shall give written notice to such adjoining owner to remove such obstruction, in such manner as they may direct and upon such terms as to expense as may seem just. If such owner neglects to comply with such order to the acceptance of such selectmen for thirty days, such selectmen may perform the work so ordered or direct the owner of such low lands to do it to the acceptance of such selectmen, and the expense thereof as certified by such selectmen, including reasonable compensation for their services, shall be paid by such of the parties in interest and in such time as such selectmen may determine, to be recovered by any party entitled thereto by an action on this statute."

utes § 52-461 are not applicable to the present controversy.

Although § 52-461 was first enacted by the General Assembly in 1877, and, with minor amendments, has remained part of the statutory law of this state since that time, this court has never had occasion to construe its terms. The portion of § 52-461 relevant to this dispute reads as follows: "Obstruction to Drainage. When any low lands have been drained by a ditch or current running thence in a natural course through the land of an adjoining proprietor and cannot advantageously be drained in any other course, and such drainage becomes obstructed, the owner of such low lands may give written notice to such adjoining owner to remove such obstruction . . . [and after noncompliance] two selectmen . . . may perform the work." The plaintiffs contend that the statute relates solely to the removal of surface water from a lowland, and that since the present case involves a stream or brook, § 52-461 does not apply.

Statutes should be construed so as to carry out the intent of the legislature. *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 46, 301 A.2d 244. If the language of the statute is unambiguous, the intent must be ascertained from that language; but where the language is of doubtful meaning, the object of the legislation as well as all other relevant circumstances should be considered. *Jarvis Acres, Inc.* v. *Zoning Commission,* supra; *McAdams* v. *Barbieri,* 143 Conn. 405, 416, 123 A.2d 182.

For § 52-461 to apply to the present case, the O'Keefe property must have been a "low land" which was being drained by a "ditch" or "current" running through the plaintiffs' property.

The drainage statutes have been in existence in Connecticut since 1796. The preamble to the first such laws recognized that there were a great number of meadows, marshes and lowlands which were spoiled by the overflow of water, and much swampy land which could be rendered profitable by drainage. The act of 1877, with which we are concerned, was merely an enlargement of the drainage laws to enable a landowner to enforce his drainage rights. See Public Acts 1796, "An Act for appointing and directing Commissioners of Sewers and Scavengers," p. 377; Public Acts 1846, No. 45; Public Acts 1849, No. 39; Public Acts 1853, No. 67; Public Acts 1877, No. 102.

The words of a statute should be interpreted in their natural and usual meaning unless such reading would defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose; *Finoia* v. *Winchester Repeating Arms Co.,* 130 Conn. 381, 384, 34 A.2d 636; even though such construction may seem contrary to the letter of the statute. *Old Saybrook* v. *Public Utilities Commission,* 100 Conn. 322, 328, 124 A. 33; *Hazzard* v. *Gallucci,* 89 Conn. 196, 198, 93 A. 230.

A review of the legislative history of the drainage laws reveals that "low lands" as used in § 52-461 are always equated with low, marshy, swampy and wet lands which may be rendered valuable by drainage. It would, therefore, be incumbent upon the person seeking to invoke the provisions of § 52-461 to show that his land was either swampland, marshland or wetland which was being drained by a ditch or current running over adjoining land in order to avail himself of its provisions. No such showing was made in this case. To the contrary,

the trial court found that the dam was located on a stream known as Willow Brook which flows through the properties of the plaintiffs and the O'Keefes, and that the upstream owners gave written notice to remove the dam. Evidence printed in the plaintiffs' appendix discloses that about four times a year the stream rises and floods the neighbors downstream and most of the downtown of Westport. It thus appears that the water course involved here is a brook or stream which runs through the lands of numerous upland and lower riparian owners as well as through the O'Keefes' and plaintiffs' properties.

No circumstances have been set forth before us which would suggest that the legislature intended that the flowage of a brook be considered drainage for the purposes of § 52-461. The fact that all the other sections in chapter 913 of the General Statutes relate to the establishment of ditches and conduits to relieve land of water indicates that § 52-461 was not designed to prevent obstruction of the natural flow of a stream, but, rather, to provide a procedure for reopening previously established routes of swampland or wetland "drainage." Furthermore, when the statutes in chapter 913 were enacted, there was a great public interest in the development of unimproved swampland, and because there was no common-law right to dispense water onto and through the land of another, the enactment of the herein drainage statutes furthered that public interest. 2A Nichols, Eminent Domain (3d Ed.) § 7.6223[1].

Moreover, since 1832, it has been the established law in Connecticut that a lower riparian owner cannot throw back the water of a stream to the

injury of an upper riparian owner. *King* v. *Tiffany,* 9 Conn. 162; see *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 445–46, 335 A.2d 301; *DeWitt* v. *Bissell,* 77 Conn. 530, 535, 60 A. 113. We perceive no public interest or other reason which would have motivated the legislature to expand that common-law protection into a statutory one to be policed and enforced by town officials without a judicial hearing.

If, in the present case, it were shown that swamp-land on the O'Keefe property was being "drained by a ditch," the obstruction of that drainage would present a situation that § 52-461 was designed to correct. Similarly, if it were shown that the O'Keefe property was "wetland" being drained through the plaintiffs' land, and that that natural current was in some way obstructed, § 52-461 might well apply. The record here, however, clearly shows that the plaintiffs' dam impaired the free flow of a natural stream and thus caused flooding on the O'Keefe property. There was no showing that surface water on the O'Keefe property was prevented from "draining" as contemplated by the statute. We conclude, therefore, that § 52-461 is not applicable to the facts of this case. Since the resolution of this issue is dispositive of the appeal, there is no need to discuss the remaining assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion LOISELLE and LONGO, Js., concurred.

HOUSE, C. J. (dissenting). I do not agree with the conclusion reached in the majority opinion that the trial court erred in holding that the provisions of § 52-461 of the General Statutes are applicable to the facts it found in the present case. I find no ambiguity in the statute which requires or justifies

such a limited construction of the statute as is reached in the majority opinion. As this court most recently stated in *Torrington Water Co.* v. *Board of Tax Review,* 168 Conn. 319, 322, 362 A.2d 866: "It is a cardinal rule of statutory interpretation that '[w]here the language of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525; 2 Sutherland, Statutory Construction (3d Ed.) § 4502. "Its unequivocal meaning is not subject to modification by way of construction. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207, 91 A.2d 773; *Swits* v. *Swits,* 81 Conn. 598, 599, 71 A. 782." *General Tires, Inc.* v. *United Aircraft Corporation,* 143 Conn. 191, 195, 120 A.2d 426.' *State* v. *Simmons,* 155 Conn. 502, 504, 234 A.2d 835." See also *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 402, 288 A.2d 435. In the absence of special circumstances, the words of a statute are to be accorded their common meaning. General Statutes § 1-1; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698.

Section 52-461 entitled "Obstruction to Drainage" is set out in its entirety in footnote 3 of the majority opinion. It is unnecessary to repeat it in full. It suffices to note the portions of the statute which are applicable to the circumstances of the present case: "When any low lands have been drained by a . . . current running thence in a natural course through the land of an adjoining proprietor and cannot advantageously be drained in any other course and such drainage becomes obstructed, the owner of such low lands may give written notice to such adjoining owner to remove such obstruction

so as to allow the water to pass off in its former accustomed manner." The statute then further provides that in the event the adjoining owner neglects to remove the obstruction the aggrieved owner may apply to the selectmen who shall proceed as did the selectmen in the present case.

The trial court found that a stream known as Willow Brook flowed in a southerly direction over the residential property of the O'Keefes and thence through the adjoining residential property of the plaintiffs Royce, that there had been constructed on the Royce property at a point five feet from the adjoining property line of the O'Keefes a dam across the brook which caused a pond to be formed on the O'Keefe property. The obstruction caused erosion of the O'Keefe property and endangered the heating system in that home. Despite the statutory notices and requests of the selectmen, the plaintiffs refused to remove the obstruction.

We may properly take judicial notice of the fact that a stream or brook, unimpeded, will flow over the land at the lowest course. *State* v. *Tomanelli,* 153 Conn. 365, 369, 216 A.2d 625. It is a long and well established principle of law that as against a lower riparian owner an upper owner is entitled to have the water flow from his land to the extent it would naturally flow and the lower owner is not justified in doing anything to prevent the natural flowoff. *Farrington* v. *Klauber,* 130 Conn. 170, 173, 32 A.2d 644; *Sisters of St. Joseph Corporation* v. *Atlas Sand, G. & S. Co.,* 120 Conn. 168, 175, 180 A. 303; *King* v. *Tiffany,* 9 Conn. 162, 165, 168. Section 52-461 is an apparent recognition of this established common-law principle applicable to a "current running thence in a natural course through the land of

an adjoining proprietor" and an addition and extension of it to man-made drainage ditches, with a grant of authority to selectmen in either case to act as the statute directs to remove an obstruction from such natural or artificial drainage.

I would find no error in the judgment of the trial court.

In this opinion BARBER, J., concurred.