STATE OF CONNECTICUT *v.* LAWRENCE DELAFOSE

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 13—decision released December 8, 1981

*Richard R. Brown,* with whom, on the brief, were *Igor I. Sikorsky, Jr., Kenneth L. Shluger,* and *David F. Waters,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, for the appellee (state).

ARMENTANO, J. This is an appeal from a judgment finding the defendant guilty of first degree escape from a state mental institution where he had been previously committed pursuant to a verdict of not guilty by reason of insanity.

The following facts are undisputed. The defendant was acquitted of a criminal charge by reason of insanity. Pursuant to General Statutes § 53a-47,[1]

[1] Between October 1, 1971 and October 1, 1981, General Statutes § 53a-47 provided, in pertinent part: "ACQUITTAL ON GROUNDS OF MENTAL DISEASE OR DEFECT. CONFINEMENT AND EXAMINATION. RELEASE. (a) (1) When any person charged with an offense is acquitted on the grounds of mental disease or defect, the court shall order such person to be temporarily confined in any of the state hospitals for mental illness for a reasonable time, not to exceed ninety days, for an examination to determine his mental condition, except that, if the court can determine, on the basis of the evidence already before it, that such person is not mentally ill to the extent that his release would constitute a danger to himself or others, the court may order his immediate release, either unconditionally or conditionally pursuant to subdivision (2) of subsection (e). (2) The person to be examined shall be informed that, in addition to the examination provided for in subdivision (1), he has a right to be examined during such confinement by a psychiatrist of his own choice. (3) Within sixty days of the confinement pursuant to subdivision (1), the superintendent of such hospital and the retained psychiatrist, if any, shall file reports with the court setting forth their findings and conclusions as to whether such person is mentally ill to the extent that his release would constitute a danger to himself or others. Copies of such reports shall be delivered to the state's attorney or prosecutor and to counsel for such persons. (4) Upon receipt of such reports, the court shall promptly schedule a hearing. If the court determines that the preponderance of the evidence at the hearing establishes that such per-

the trial court ordered the defendant committed to the Connecticut Valley Hospital for a psychiatric examination to determine whether he constituted a danger to himself or society. After a hearing in May, 1977, the trial court ordered that the defendant be committed to the Connecticut Valley Hospital for a term not to exceed ten years or until such time as he did not constitute a danger to himself or to society. For the period from June, 1977, through January, 1979, the defendant was committed to the Whiting Forensic Institute of the Connecticut Valley Hospital in Middletown. In January, 1979, he was transferred to a locked ward at the Connecticut Valley Hospital.

Sometime during the night of June 27–28, 1979, the defendant left the premises of the Connecticut Valley Hospital without permission. He remained at large until his apprehension on September 19, 1979. On October 17, 1979, the defendant was charged with the crime of escape in the first degree in violation of General Statutes § 53a-169 on the basis of his having left the mental institution in June. After a trial to the court with jury waived,

son is mentally ill to the extent that his release would constitute a danger to himself or others, the court shall confine such person in a suitable hospital or other treatment facility.

"(b) Whenever a person is committed for confinement pursuant to subdivision (4) of subsection (a), his confinement shall continue until he is no longer mentally ill to the extent that his release would constitute a danger to himself or others, provided the total period of confinement, except as provided in subsection (d), shall not exceed a maximum term fixed by the court at the time of confinement, which maximum term shall not exceed the maximum sentence which could have been imposed if the person had been convicted of the offense. Where the offense is a class A felony, such maximum term shall be twenty-five years."

Section 2 of Public Acts 1981, No. 81-301, effective October 1, 1981, substituted "found guilty but not criminally responsible" for "acquitted" in General Statutes § 53a-47.

the defendant was found guilty of escape in the first degree on January 31, 1980. He was sentenced to a term of not less than four years nor more than eight years at the Connecticut Correctional Institution at Somers, said sentence to run concurrently with his commitment to the Connecticut Valley Hospital.

In his appeal from the judgment rendered, the defendant claims two errors.

The defendant's first claim of error is that the escape statute in effect at the time of the alleged escape did not apply to an individual who escaped from a mental institution where he had been committed after a judgment of acquittal by reason of insanity. Consequently, the defendant argues that the state had failed to prove its case against him. The defendant advanced this claim for the first time on appeal. This court need not consider a claim that was not distinctly raised at the trial and did not arise subsequent thereto. Practice Book § 3063; see, e.g., *State* v. *Cuvelier*, 175 Conn. 100, 111, 394 A.2d 185 (1978); Maltbie, Conn. App. Proc. §§ 304-306. When plain error is not brought to the attention of the trial court, however, this court may consider the error in the interests of justice. Practice Book § 3063; see, e.g., *Hormel* v. *Helvering*, 312 U.S. 552, 557, 61 S. Ct. 719, 85 L. Ed. 1037 (1941); *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 181 Conn. 607, 609, 436 A.2d 1259 (1980); *State* v. *Rodriquez*, 180 Conn. 382, 399 n.10, 429 A.2d 919 (1980); see also 10 Moore's Federal Practice (2d Ed. 1981) § 103.41. In criminal cases, this court has considered issues first raised on appeal principally in two situations: (1) when a "new constitutional right not readily foreseeable has arisen," or (2) when a "litigant has clearly been deprived of a

fundamental constitutional right and a fair trial."
*State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576
(1973); see, e.g., *State* v. *Arroyo,* 180 Conn. 171, 173,
429 A.2d 457 (1980); *State* v. *Briggs,* 179 Conn. 328,
332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912,
100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). Moreover,
the record must be sufficiently complete for this
court to consider the claim on the merits. See *State*
v. *Baker,* 182 Conn. 52, 57, 437 A.2d 843 (1980);
*State* v. *Anderson,* 178 Conn. 287, 290, 422 A.2d 323
(1979); *State* v. *Evans,* supra, 71.

If the state introduced no evidence to establish a
necessary element of the crime charged it failed to
meet its burden of proof and the defendant was
thereby deprived of due process and a fair trial.
*State* v. *Rogers,* 177 Conn. 379, 381, 418 A.2d 50
(1979); see, e.g., *Patterson* v. *New York,* 432 U.S.
197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977).
Because the defendant claims he has been deprived
of a fundamental right and a fair trial, and the
record is sufficiently complete for this court to con-
sider the claim on the merits, we will respond to the
defendant's claim.

We must construe the escape statute in effect on
the date of the alleged escape. The objective of stat-
utory construction is to give effect to the intended
purpose of the legislature. E.g., *Kokoszka* v. *Bel-
ford,* 417 U.S. 642, 650, 94 S. Ct. 2431, 41 L. Ed. 2d
374, reh. denied, 419 U.S. 886, 95 S. Ct. 160, 42 L. Ed.
2d 131 (1974); *Sillman* v. *Sillman,* 168 Conn. 144,
147, 358 A.2d 150 (1975). When statutory language is
unambiguous in meaning, it is assumed to convey
legislative intent. E.g., *Brittany Farms Health Cen-
ter, Inc.* v. *Administrator,* 177 Conn. 384, 388, 418
A.2d 52 (1979); *Connecticut State Board of Labor*

*Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979). When a common sense interpretation leads to an ambiguous or unreasonable result, however, this court must ascertain legislative intent from the circumstances surrounding the enactment, the legislative history, and the general purpose of the statute. E.g., *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978); *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978). "The words of a statute should be interpreted in their natural and usual meaning unless such reading would defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose . . . even though such construction may seem contrary to the letter of the statute." *Royce* v. *Heneage,* 170 Conn. 387, 392, 365 A.2d 1109 (1976); see *City Savings Bank of Bridgeport* v. *Lawler,* 163 Conn. 149, 157, 302 A.2d 252 (1972).

The version of General Statutes § 53a-169 in effect between October 1, 1978, and October 1, 1980, provided that "[a] person is guilty of escape in the first degree (1) if he escapes from a correctional institution, any public or private, nonprofit half-way house, group home or mental health facility . . . ."[2] The plain language of the statute would impose liability for a felony regardless of the nature of commitment to the facility from which an accused left without permission. Therefore, a person who had voluntarily committed himself to a mental institution would be guilty of a class C felony if he left

[2] General Statutes § 53a-169, as amended to 1979, also imposed liability for escape if a person "(2) . . . escapes from a work detail or school on the premises of the correctional institution or (3) he fails to return from a furlough authorized under section 18-101a or (4) he fails to return from work release or education release as authorized under sections 18-90a and 18-100."

the institution without permission or authorization. This is the bizarre result of a literal construction of the statute not contemplated by the legislature. Assuming the legislature intended to accomplish a reasonable and rational result; *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979); *Frazier* v. *Manson,* 176 Conn. 638, 643, 410 A.2d 475 (1979); we will examine the legislative history of the statute to ascertain its intended purpose.

Prior to an amendment effective on October 1, 1978, General Statutes § 53a-169 provided that "[a] person is guilty of escape in the first degree (1) if he escapes from a correctional institution . . . ."[3] Section 2 of Public Acts 1978, No. 78-92, entitled "An Act Concerning Work-Release and Education-Release Programs," added liability for escape from "any public or private nonprofit half-way house, group home or mental health facility." Section 1 of

---

[3] General Statutes § 1-1 (w) provides: " 'Correctional institutions' means the Connecticut Correctional Institution, Somers; the Connecticut Correctional Institution, Enfield; the Connecticut Correctional Institution, Niantic; the Connecticut Correctional Institution, Cheshire; the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and the Connecticut Correctional Camp, Portland. Wherever in the general statutes, the words 'State Prison,' appear, they shall be construed to mean the Connecticut Correctional Institution, Somers; 'State Prison for Women' shall be construed to mean the maximum security division of the Connecticut Correctional Institution, Niantic; 'jails' or 'jail' shall be construed to mean the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and those portions of the Connecticut Correctional Institution, Niantic, used to detain female persons awaiting disposition of pending charges or to confine female persons convicted of, or who plead guilty to, the commission of misdemeanors and who have been sentenced to community correctional centers or any of them, as the case may be; 'Connecticut Reformatory' shall be construed to mean the Connecticut Correctional Institution, Cheshire, 'The Connecticut State Farm for Women' shall be construed to mean the Connecticut Correctional Institution, Niantic."

Public Acts 1978, No. 78-92 authorized the commissioner of correction to transfer persons from correctional institutions into these facilities.[4] Statements at House hearings on Substitute House Bill No. 5271 by the proponent of the bill and the chairman of the House Committee on the Judiciary[5] make it clear that the amendment was intended only

[4] Public Acts 1978, No. 78-92, § 1 substituted the following for § 18-100 (e): "If the commissioner of correction deems that the purposes of this section may thus be more effectively carried out, he may transfer any person from one correctional institution to another or to any public or private nonprofit half-way house, group home or mental health facility, with the concurrence of the superintendent or person in charge of the facility to which said person is being transferred. Any inmate so transferred shall remain under the jurisdiction of said commissioner."

[5] The proponent of the bill, Representative Muriel Yacavone, explained at the March 31, 1978 House Hearings that, "this amendment simply adds a little further clarification that .you're referring to these institutions when you are listing the circumstances in which an *inmate* is escaping. And it's in addition to leaving work-release— an escape from the facility to *which he's transferred* is to be treated as another escape." (Emphasis added.) 21 H.R. Proc., Pt. 3, 1978 Sess., p. 1066. Representative Yacavone further stated that the bill "also makes sure that if such *inmate* leaves the facility of this type, he *is* in the same classification with an inmate who escapes from a correctional institution." (Emphasis added.) Id., 1067. "[A]ll the people that we're talking about here are serving sentences. They're under the jurisdiction of the Commissioner of Corrections. . . ." Id., 1070.

Representative Ernest N. Abate, the chairman of the Committee on the Judiciary, stated that the bill only "extends the circumstances in which an individual might be considered guilty of escape by indicating that someone who fails to return from a work-release program or from an education-release program would be guilty . . . of escape." Id., 1072. Finally, Representative Yacavone summarized that "it's pretty clear that an escape is an escape but apparently the Commissioner [of correction] would feel a lot more comfortable having it in the statute that these people on work release are guilty of escape if they leave. There may have been cases already where there has been a question in the minds of the courts, and this simply clarifies it. They are under the jurisdiction of the Commissioner of Corrections so it seems obvious that they are guilty of escape. But we're just saying so in this bill." Id., 1073.

to impose the same liability for a prisoner's escape from the designated facilities as for the prisoner's escape from the correctional institution from which he had been transferred. Cf. *United States* v. *Wood*, 628 F. 2d 554, 560 (D.C. Cir. 1979); *United States* v. *Powell*, 503 F.2d 195, 196 (D.C. Cir. 1974).

A 1980 amendment to General Statutes § 53a-169 entitled "An Act Concerning Escape from a Correctional Institution," further clarified the legislative intent that a person is guilty of escape "from any public or private nonprofit half-way house, group home or mental health facility" only if "he is in the custody of the commissioner of correction or is required to be returned to the custody of said commissioner upon his release." Public Acts 1980, No. 80-216, § 2; 23 S. Proc., Pt. 8, 1980 Sess., p. 2475. For example, a person committed to the commissioner of mental health pursuant to a conviction for a crime involving dependency-producing drugs[6] is "deemed to have been committed to a correctional institution during any period of hospitalization . . . and an unauthorized departure from the hospital shall be an escape within the terms of section 53a-169." General Statutes § 19-485 (e).

---

[6] General Statutes § 19-485(a) provides that if a person convicted of a violation of the chapter on dependency-producing drugs "is drug dependent and . . . his violation was committed for the primary purpose of sustaining his drug dependence or because he was drug dependent [the court] may, in addition to [other] penalties . . . issue an order committing such person to the commissioner of mental health for a period not to exceed twenty-four months. If sentence has not been imposed, the court shall first proceed upon the conviction, impose sentence, order commitment to the commissioner of mental health and suspend execution of such sentence during the period of such commitment. The court may order such person into an inpatient treatment program or may permit him to enroll in a community treatment program upon recommendation of the commissioner of mental health . . . ."

The defendant was not in a "correctional institution" within the meaning of General Statutes §§ 1-1 (w) and 53a-169 at the time of his escape. Furthermore, the legislative history of § 53a-169[7] indicates that, in order to be guilty of an escape under § 53a-169 as amended to 1979, an individual who escapes from "any public or private, nonprofit half-way house, group home or mental health facility" must *first* have been under the jurisdiction of the commissioner of correction and then have been subsequently transferred to one of the foregoing institutions. In the present case, the defendant was sent, pursuant to § 53a-47, directly to the Connecticut Valley Hospital and into the jurisdiction of the commissioner of mental health and not the commissioner of correction. See General Statutes §§ 17-207b (b) and 17-210a (b).

The defendant's acts during the night of June 27-28, 1979, did not constitute the class C felony of escape in the first degree in violation of General Statutes § 53a-169, as amended to that date, because he was not under the jurisdiction of the commissioner of correction. Therefore, the trial court committed reversible error in convicting the defendant of the crime.[8]

There is error, the judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion the other judges concurred.

---

[7] See footnote 5, supra.

[8] The defendant also claims error in the trial court's admission, over his objections, of the Superior Court file with respect to his prior acquittal by reason of insanity, and testimony relating thereto. Our resolution of the defendant's first claim of error is dispositive of the appeal. It is unnecessary for this court to address itself to the defendant's second claim of error.