[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
On January 21, 1997, the plaintiffs, Laurie Wilkinson (Wilkinson) and Body Basics, LLC, filed a nine count amended complaint against the defendants, Rose-Wein, LLC and Bruce Weinstein (Weinstein). The plaintiffs allege that on September 15, 1995, Wilkinson and Rose-Wein entered into two written agreements. The first dealt with Wilkinson's compensation for accepting the position of club manager at The Club, located in New Milford, Connecticut. The second agreement required Wilkinson to cease all activities for Body Basics. Pursuant to this agreement, Wilkinson was entitled to a $25 bonus for each Body Basic member who signed a membership with The Club, and an additional bonus of $25 for every former Body Basics member who continued membership in The Club twelve months after joining.
Counts one and two allege breach of contract for failure to pay Wilkinson her salary, bonuses or vacation time pursuant to the subject agreements. Count three alleges that as a result of Wilkinson's reliance on the agreements she terminated operations of Body Basics and recruited her former clients to The Club and as a result has lost profits therefrom.
In count four, the plaintiffs bring a cause of action for conversion. They allege that Wilkinson brought personal property, of which plaintiffs had legal ownership and superior CT Page 5386 rights of possession, to The Club at no charge. The Club used the personal property in its operations. After her termination, the defendants did not allow removal of most of the items until July 24, 1996, and retained use of the items during that time. This was done without the consent of the plaintiffs and despite demand for their return.
Count five alleges a violation of General Statutes § 31-51
for blacklisting. The plaintiffs allege that Weinstein stated in a letter to plaintiffs' counsel that "you will carefully counsel your client regarding the risks and personal impact of the public exposure of her poor performance." The plaintiffs' contend that the above mentioned letter violates § 31-51 in that it attempted to extort silence and prevention of plaintiff exercising her right to pursue legal action. It is further alleged that Weinstein stated in a public meeting, which included many former and potential clients of the plaintiffs, that Wilkinson was a "Dr. Jeckel and Mr. Hyde" and that she had been paid $40,000 for her business.[1] Additionally, it is alleged that the defendants have banned any part-time instructors at The Club from teaching any classes for the plaintiff. Such ban was alleged put into effect only after the plaintiffs had advertised the services of the instructors.
In count six the plaintiffs incorporate the allegations of the first five counts and additionally allege that Weinstein physically appeared a Wilkinson's new place of employment and business, without invitation. When discovered by the owner of the gym, Weinstein ran out the door. It is alleged that the above mentioned statements and acts by Weinstein were outrageous and intended and did inflict severe emotional distress upon Wilkinson.
Count seven, which incorporates the previous six counts, alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiffs allege that the defendants' above mentioned actions constituted an unfair and disruptive trade practice. It is further alleged that the defendants violated public policy in that:
a) Wilkinson had ceased operations of a business which would have competed with defendants;
b) Rose-Wein did not pay plaintiff as agreed; CT Page 5387
c) the defendants attempted to extort non-action by the plaintiff by threatening to discredit her;
d) the defendants have attempted to limit competition by preventing employment of part-time employees at Wilkinson's facility only;
e) the defendants by extortion, breach of contract, and other unscrupulous acts have attempted to affect competition in the fitness business in the greater New Milford area.
Counts eight and nine incorporate all the previous counts and allege that the defendants have breached their implied duty of good faith and fair dealing by not improperly designating Wilkinson as an independent contractor and, therefore, not paying her income or social security taxes. The plaintiffs also allege that the defendants breached the implied covenant by:
a) improperly managing and overseeing said operation;
b) not providing the promised accounting help and training;
c) not paying Wilkinson what is owed her;
d) engaging in a concert of misrepresentations and breached promises with regards to Wilkinson's employment;
e) engaging in a series of actions aforesaid which detrimented the plaintiff and which were violations of employment laws.
On February 24, 1997, the defendants, pursuant to Practice Book § 152, moved to strike counts three through nine. They do not challenge the legal sufficiency of counts one and two. The defendants move to strike count three on the ground that Wilkinson's termination of employment does not give rise to a cause of action for damages for lost profits. The defendants also move to strike counts four through nine on the ground that the plaintiffs have failed to set forth facts sufficient state legal claims for the causes of action alleged.
As required by Practice Book § 155, the defendants have filed a memorandum in support of their motion to strike, and the plaintiffs have timely filed a memorandum in opposition. CT Page 5388
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted." Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint"; (citation omitted) id.; and the grounds specified in the motion.Blancato v. Feldspar Corp., 203 Conn. 34, 44, 522 A.2d 1235
(1987). The motion to strike "admits all facts well pleaded."Mingachos v. C.B.S., Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). "The court must construe the facts in the complaint most favorably to the plaintiff." Waters v. Autuori, supra,236 Conn. 825. "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Id., 826.
Count 3
Lost profits are a proper measure of damages in a claim for breach of contract. Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 32, 662 A.2d 89 (1995). "[The Supreme Court] has consistently applied the general damage formula of Hadley v. Baxendale, 9 Ex. 341, 345, 156 Eng. Rep. 145 (1854), to the recovery of lost profits for breach of contract, and it is [the] rule that unless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." Id. "Reasonable certainty of proof is all that is required, and mere uncertainty as to the amount of lost profits may be dispelled by the same degree of proof as is required in other civil actions, that is, the amount may be determined approximately upon reasonable inferences and estimates." Id.
The defendants argue that because the plaintiffs voluntarily entered into the employment agreements, they reasonably foresaw that the business of Body Basics would cease irrespective of Wilkinson's continued employment with The Club. Thus, it is argued, lost profits cannot be deemed a direct and natural consequence of the alleged breach.
The plaintiffs, however, allege that Wilkinson closed Body Basics in reliance on the agreements and that as a result of the defendants' breach of those agreements, the plaintiffs lost potential profits. Thus, as plead, the plaintiffs' claim for lost profits was a direct and natural consequence of the defendant's alleged breach of the agreements. Consequently, the CT Page 5389 plaintiffs have sufficiently alleged a cause of action for lost profits and the motion to strike count three is denied.
Count Four
"[C]onversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Lawson v. Whitey's Frame Shop,42 Conn. App. 599, 606, 682 A.2d 1016, cert. granted on other grounds, 239 Conn. 929, 683 A.2d 397 (1996). Conversion also "requires that the owner be harmed as a result of the unauthorized act." Id. The plaintiffs have sufficiently alleged that they owned the subject personal property, that the defendants prevented the removal of the property, and that they were harmed in that they were denied the benefit and possession of the subject property.
The defendants present two arguments in support of their motion to strike. First, they argue that neither of the two aforementioned agreements provides that plaintiffs were required to bring personal property to be used at The Club. Secondly, the agreements do not provide that Rose-Wein was required to return any personal property that Wilkinson abandoned at The Club at the time of her termination.
The defendants first argument lacks merit because the issue is not whether Wilkinson was required to bring the personal property to The Club but rather whether the defendants converted the property to their own use after Wilkinson's termination and after her request for its return.
The second argument also misses the mark. "Abandonment in its general sense is the intentional relinquishment of a known right." Sharkiewicz v. Lepone, 139 Conn. 706, 707, 96 A.2d 796
(1953). Abandonment of personal property requires "an intention to abandon or relinquish accompanied by some act or omission to act by which such an intention is manifested." Sanchez v.Forty's Texaco Service, Inc., 5 Conn. App. 438, 440, 499 A.2d 436
(1985). "This is so when its possession is voluntarily forsaken by the owner." Sharkiewicz v. Lepone, supra, 139 Conn. 707. Where, as here, the owner of the property has requested its return, no abandonment can exist.
Accordingly, the defendants motion to strike count four of the plaintiffs' amended complaint is denied. CT Page 5390
Count Five
General Statutes § 31-51 states, in pertinent part, that:
 "any person, or any officer or agent of any corporation, company [or] firm . . . who blacklists any employee . . . or publishes or causes to be published the name of any such employee . . . with the intent and for the purpose of preventing such employee . . . from engaging in or securing employment from any other person, corporation, company [or] firm . . . or in any manner, conspires or contrives, by correspondence or otherwise, to prevent such employee . . . from procuring employment, shall be fined not less than fifty and not more than two hundred dollars."
The plaintiffs allege that Weinstein sent a letter to Wilkinson's counsel, at counsel's request, which stated that "you will carefully counsel your client regarding the risks and personal impact of the public exposure of her poor performance as an employee of The Club." The plaintiffs contend that the letter violated § 31-51 in that it attempted to extort silence and prevention of Wilkinson exercising her legal and constitutional rights to bring civil action to obtain payments for what was owed and threatened her with public blacklisting if she pursued such legal action. In addressing whether the plaintiffs can bring a claim for threatened blacklisting, we are guided by the "`well established principles that require us to ascertain and give effect to the apparent intent of the legislature. Norwich v.Silverberg, 200 Conn. 367, 370-71, 511 A.2d 336 (1986); State v.Kozlowski, 199 Conn. 667, 673, 509 A.2d 2 (1986); Hayes v. Smith,194 Conn. 52, 57, 480 A.2d 42 (1984); State v. Delafose,185 Conn. 517, 521, 441 A.2d 158 (1981); 2A Sutherland, Statutory Construction (4th Ed. 1984) 45.05. When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. Johnson v. Manson,196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063,106 S.Ct. 813, 88 L.Ed.2d 787 (1986); Mazur v. Blum,184 Conn. 116, 118-19, 441 A.2d 65 (1981). When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; CT Page 5391State v. Kozlowski, supra, 673; Dukes v. Durante, 192 Conn. 207,214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; State v.Kozlowski, supra, 673; DeFonce Construction Corporation v. State,198 Conn. 185, 187, 501 A.2d 745 (1985); State v. Parmalee,197 Conn. 158, 161, 496 A.2d 186 (1985); State v. Delafose, supra 522; and the purpose the statute is to serve. Peck v. Jacquemin,196 Conn. 53, 64, 491 A.2d 1043 (1985); Verrastro v. Silvertsen,188 Conn. 213, 221, 448 A.2d 1344 (1982); Robinson v.Unemployment Security Board of Review, 181 Conn. 1, 8,434 A.2d 293 (1980).' Rhodes v. Hartford, 201 Conn. 89, 93, 513 A.2d 124
(1986)." Norwich v. Housing Authority, 216 Conn. 112, 117-18,579 A.2d 50 (1990).
This court finds the language of § 31-51 clear and unambiguous.[2] The statute explicitly states that persons who blacklist an employee shall be fined. It makes no provisions for a situation where, as in the case of Weinstein's letter, the defendants did not blacklist but rather made an implied threat that they would. Therefore, Weinstein's letter cannot serve as the basis for a claim of blacklisting under § 31-51.
The plaintiffs, however, further allege that Weinstein stated in public that Wilkinson was a "Dr. Jeckel and Mr. Hyde" and that Wilkinson had been paid $40,000 for Body Basics. In construing the allegations in the light most favorable to the plaintiff, the court finds that such a claim sufficiently alleges a statutory cause of action for blacklisting. As alleged, Weinstein made public statements about Wilkinson that were made with the intent of preventing her from engaging in or securing employment in the physical fitness industry. Accordingly, the motion to strike count five is denied.
Count Six
In order for the plaintiffs to sufficiently plead a cause of action for intentional infliction of emotional distress "[i]t must be [alleged]: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Liability for intentional infliction of emotional distress CT Page 5392 requires conduct exceeding all bounds of usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."Drew v. K-Mart Corp., 37 Conn. App. 239, 251, 655 A.2d 806
(1995), citing DeLaurentis v. New Haven, 220 Conn. 225, 266-67,597 A.2d 807 (1991). "Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim, `Outrageous!'" Restatement (Second), Torts § 46 comment (d).
Furthermore, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second), Torts § 46 comment (h).
Weinstein's appearance at Wilkinson's new place of employment was not extreme or outrageous conduct. The gym was open to the public and as a member of the public Weinstein was not engaging in outrageous conduct by entering the gym. He never spoke to or was seen by Wilkinson because, as alleged by the plaintiffs, he ran out the door upon being discovered. Such actions are clearly not outrageous to the average member of the community.
In addition, the plaintiffs' factual allegations from the prior counts also do not allege conduct which is extreme or outrageous. Weinstein's statement that Wilkinson was a "Dr. Jeckel and Mr. Hyde" or the defendants conversion of the plaintiff's property do not constitute conduct that would make the average Connecticut resident exclaim, "Outrageous!"
For the foregoing reasons, the defendants' motion to strike count six is granted.
Count Seven
The Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b, provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business." Fink v.CT Page 5393Golenbock, 238 Conn. 183, 212, 680 A.2d 1243 (1996). "Trade or commerce, in turn, is broadly defined as the advertising, sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." (internal quotation marks omitted.) Id., 212-13. "It is well settled that in determining whether a practice violates CUTPA [the Supreme Court has] adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the extent to which it meets one of the criteria or because to a lesser extent it meets all three." Id., 215.
Furthermore, the Supreme court has "stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. " Id. "CUTPA is not limited to conduct involving consumer injury." (Internal quotation marks omitted.) Id.
As noted above, the plaintiffs have sufficiently alleged a cause of action, in count four, for conversion. "Conversion, or the unauthorized taking or retention of the property of another, is, of course, wrongful conduct under the common law. Clearly, therefore, it is a practice which offends public policy as it has been established by the common law and violates CUTPA." (Internal quotation marks omitted.) Halloran v. Spillane'sServicecenter, Inc., 41 Conn. Sup. 484, 499, 587 A.2d 176 (1990).
Therefore, the defendants' motion to strike count seven is denied.
Counts Eight and Nine
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the CT Page 5394 agreement." Gupta v. New Britain General Hospital,239 Conn. 574, 598, 687 A.2d 111 (1996). "Bad faith means more than mere negligence it involves a dishonest purpose." Id. "Neglect or refusal to fulfill a contractual obligation can be bad faith only if prompted by an interested or sinister motive." Feinberg v.Berglewicz, 32 Conn. App. 857, 862, 632 A.2d 709 (1993), citingHabetz v. Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992).
The defendants urge this court to follow the Supreme Court's holding in Magnan v. Anaconda Industries, Inc., 193 Conn. 558,479 A.2d 781 (1984). The defendants reliance on Magnan is misplaced. That case involved the issue of whether the doctrine of an implied covenant of good faith and fair dealing is applicable to the termination of an employment contract. The court accepted the principle that implied in every contract of employment is a covenant of good faith and fair dealing in the contractual relationship, but specifically declined the invitation of the plaintiff to transform the requirement of good faith into an implied condition that an employee may be dismissed only for good cause.
The defendants reliance on Magnan is misplaced. This is not wrongful termination case. The alleged breaches occurred prior to termination. The plaintiffs have alleged that the defendants have breached the implied covenant of good faith and fair dealing by engaging in a series of misrepresentations regarding Wilkinson's employment and by not paying Wilkinson's income and social security taxes when they were obligated to do so. In construing the pleadings in a light most favorable to the plaintiffs, this court finds that the plaintiff's allegations sufficiently allege a cause of action for a breach of the implied covenant of good faith and fair dealing. Accordingly, the defendants motion to strike counts eight and nine is denied.
Conclusion
For the foregoing reasons, the defendants' motion to strike counts three, four, five, seven, eight and nine of the plaintiffs' amended complaint is denied. The defendants' motion to strike count six is granted.
HON. WALTER M. PICKETT, JR. State Judge Referee