**CAMP, DRESSER & McKEE, INC., Plaintiff–Appellee,**

v.

**TECHNICAL DESIGN ASSOCIATES, INC., James P. Purcell Associates, Inc., Defendants,**

**James P. Purcell Associates, Inc., Defendant–Appellant.**

**No. 1280, Docket 90–9088.**

United States Court of Appeals, Second Circuit.

Argued April 8, 1991.

Decided July 1, 1991.

Thomas J. Shortell, Hartford, Conn. (Updike, Kelly & Spellacy, P.C., of counsel), for defendant-appellant.

William H. Prout, New Haven, Conn. (William J. Egan, Penelope I. Bellamy, Wiggin & Dana, of counsel), for plaintiff-appellee.

Before CARDAMONE and MAHONEY, Circuit Judges, and PARKER, District Judge.*

PARKER, District Judge:

## BACKGROUND

On October 29, 1971, the City of New Haven (the City) and Camp, Dresser & McKee, Inc. (CDM) entered into a contract in which CDM agreed to provide the complete design for the East Shore Wastewater Treatment Plant (the plant).

The design of the plant involved "process design" and "non-process design." The former included design of the machinery, equipment and systems necessary to treat sewage. Non-process design involved design of the building which houses the processing components and the systems to serve the building such as the plumbing, electrical, heating, ventilating, and air conditioning systems (HVAC).

On September 29, 1971, CDM entered into a subcontract with James P. Purcell Associates, Inc. (Purcell) in which Purcell agreed to provide CDM with the complete non-process design for the plant. On the same date, Purcell entered into a sub-subcontract with Technical Design Associates, Inc. (TDA) in which TDA agreed to provide Purcell with the engineering services necessary for the electrical systems for the plant. Design of the plant was completed in 1975 and construction was completed in 1982.

On May 31, 1984, the City commenced suit against CDM for alleged negligence in the design and construction of the plant. On February 4, 1986, CDM filed third party actions against both Purcell and TDA claiming indemnity for any damages incurred by CDM as a result of errors or deficiencies in the HVAC drawings furnished by Purcell and prepared by TDA. On June 11, 1986, Purcell filed a cross-claim against TDA. Default judgments were entered against TDA in favor of Purcell and CDM.

With regard to the defects in the HVAC system, it was determined that the HVAC fresh air intake was located too close to the exhaust vents from the ozonator, a chamber where all of the noxious gases generated in the wastewater treatment were collected, treated and then discharged. As a result, corrosive gases discharged from the ozone chamber were ingested by the air intake system and distributed to the administrative areas of the building. The discharged gases were found to have caused extensive damage to the City's computer control equipment.

In mid–1989, the district court conducted an extensive series of settlement negotiations between the City, CDM and Purcell. The City agreed to accept $2,700,000 from CDM in full settlement of all its claims against CDM including the claims arising from damage caused by the HVAC system. CDM in turn agreed to accept a sum certain from Purcell due to defects in the HVAC system. Purcell rejected CDM's proposal. On November 6, 1989, CDM agreed to the City's demand and paid $2.7

* The Honorable Fred I. Parker, of the United States District Court for the District of Vermont, sitting by designation.

million. On November 29, 1989 the District Court entered a stipulated judgment in favor of the City and against CDM for $2.7 million. The judgment provided:

> $600,000 is attributable to the claim for improper placement of the fresh air intake vent in close proximity to the exhaust from the ozone chamber.

Joint Appendix (JA) 114–115. Purcell did not join in the stipulation of judgment. The District Court retained jurisdiction to hear and determine CDM's third party claim for indemnity from Purcell.

On December 21, 1989, pursuant to § 52–192a of the Connecticut General Statutes, CDM filed an offer of judgment directed at Purcell to settle the claim for $250,000. JA122. Purcell rejected this offer.

By agreement of the parties, the case was referred to Magistrate Judge F. Owen Eagan for trial. The Magistrate Judge issued a decision in which he found Purcell liable to CDM for $600,000 for the defective HVAC design. He found "that pursuant to the contract between CDM and Purcell, Purcell expressly assumed the obligation of properly designing the plant's ventilation system." JA176. Hence, the Magistrate Judge based Purcell's liability on breach of an express contractual agreement. The Magistrate Judge also specifically found CDM's settlement with the City to be reasonable in amount and awarded $600,000 in damages plus interest under Connecticut General Statutes § 37–3a and § 52–192a.

Purcell objected in the district court to the Magistrate Judge's decision on the grounds that it never identified the basis of Purcell's obligation to indemnify CDM. Specifically, Purcell argued that "absent a statutory or contractual obligation to indemnify, the only basis for a claim of indemnity is the active passive negligence theory of *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 207 A.2d 732 (1965)." JA180. Purcell further argued that CDM failed to prove the necessary four factors under *Kaplan* that would entitle it to indemnification. Purcell's final objection was to the Magistrate Judge's imposition of interest.

On October 10, 1990, the trial court affirmed, ratified and adopted the Magistrate Judge's Memorandum of Decision. The trial court agreed that there was no indemnity provision in the Purcell/CDM contract, but rejected Purcell's argument that the only basis for indemnification is *Kaplan.* The trial court held: "Thus because the duty to indemnify is the relief sought for a breach of contract, it does not arise from operation of law and Purcell's reliance on *Kaplan* ... is misplaced." JA196. Judgment was entered on October 16, 1990 and Purcell timely filed its notice of appeal on November 4, 1990.

## JURISDICTION

Appellate jurisdiction in this case is premised on either of two alternative grounds. We have appellate jurisdiction either under 28 U.S.C. § 636(c)(3) as an appeal from a judgment entered on a magistrate judge's ruling, or as an appeal under 28 U.S.C. § 1291 from a district court judge's ruling approving a recommended ruling of a magistrate judge under 28 U.S.C. § 636(b).[1]

## DISCUSSION

### 1. *The Breach of Contract Claim*

■ The appellant Purcell's efforts on this appeal are essentially to spar with a

---

1. The uncertainty as to this court's jurisdictional premise is engendered by the rather murky procedural background of this case. On March 13, 1991, a prior panel of this court examined the procedural posture of this case in response to an application by Purcell, described below, and ruled that jurisdiction existed on one or the other of these grounds. Apparently, the record of the proceedings below failed to clearly reflect whether Magistrate Judge Eagan was acting in the capacity of a special master pursuant to 28 U.S.C. § 636(b) or exercising civil trial jurisdiction under 28 U.S.C. § 636(c). The record also failed to clarify whether District Judge Dorsey reviewed the Magistrate Judge's "Memorandum of Decision" as a recommended ruling under 28 U.S.C. § 636(b) or as an appeal from a Magistrate's decision under 28 U.S.C. § 636(c)(4). Purcell filed a Notice of Appeal on November 4, 1991, as well as a petition for leave to file an appeal pursuant to 28 U.S.C. § 636(c)(5). The March 13, 1991 panel of this court denied Purcell's petition for leave to appeal but found jurisdiction as previously stated.

straw man of no substance. The argument goes that there is no express provision in the contract between Purcell and CDM whereby Purcell agrees to indemnify CDM. Therefore, the only basis for indemnification must be the decision in *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 207 A.2d 732 (1965). Under *Kaplan*, in order for CDM to be indemnified by operation of law CDM must show that Purcell was actively or primarily negligent, and that CDM was only secondarily or passively negligent. Purcell argues that CDM cannot meet those requirements of *Kaplan* and, accordingly, there is no indemnification as a matter of law and no indemnification under the contract so CDM must fail.

Purcell seems to ignore the fact that this is an indemnification case only in the sense that the amount of damages, which the trial court awarded to CDM, is the amount of money which CDM paid the City as a result of the consent judgment. The cause of action on which CDM recovered below, however, is not an indemnification theory, but a breach of contract theory. The trial court held:

> [W]hile there was no indemnity provision in the contract, CDM alleged a breach of an express contract obligation. Pursuant to the contract, Purcell "assumed principal responsibility for architectural, mechanical, electrical, ... structural, and ... civil engineering [services] includ[ing] ... [a]ll heating, ventilating and air conditioning building design for process installation.

JA196–197 (quoting CDM/Purcell Consultant's Agreement).

On the basis of that provision Purcell was responsible for the design of the HVAC system, which was defectively designed because its fresh air intake was located only 25 feet from the ozone chamber exhaust vent, permitting corrosive gases to enter the HVAC system.

The *consequences* of Purcell's breach of the design contract was that CDM became obligated to pay the City $600,000. That amount then simply became the reasonable measure of the consequential damages under the contract, which the trial court so held.

CDM pled both a breach of contract claim and a negligence claim in the complaint. Since the trial court found in CDM's favor on the breach of contract claim, there is no need for us to analyze the negligence claim under *Kaplan* as appellant urges us to do. There is also no reason for us to disturb the trial court's findings on the contract claim, which are supported by the evidence. We, therefore, affirm the trial court's conclusion that Purcell's breach of contract resulted in consequential damages of $600,000.

■ Purcell also raises a statute of limitations issue for the first time on appeal in a footnote in its appellate brief. Purcell claims that it never invoked the statute of limitations defense below because CDM pled an action for indemnity in tort. CDM properly counters that it also pled a cause of action for breach of contract in count one of its amended complaint. Purcell's failure to raise the statute of limitations defense below constitutes a waiver of the defense.

2. *Allocation of Interest*

■ The final issue in this case is Purcell's objection to the Magistrate Judge's allocation of interest. The Magistrate Judge found that CDM was entitled to 10% interest under Connecticut General Statute § 37–3a (1987) and 12% interest under Connecticut General Statute § 52–192a(b) (1988). We hold that the Magistrate Judge applied and interpreted the statutes correctly in calculating the interest.

Connecticut General Statute § 37–3a (1987) provides:

> Except as provided in sections 37–3b, 37–3c and 52–192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, *as damages for the detention of money after it becomes payable....* [Emphasis added.]

Connecticut General Statute § 52–192a(b) (1988) provides:

After trial the court shall examine the record to determine whether the plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his "offer of judgment," the court shall add to *the amount recovered* twelve per cent annual interest on *said amount,* computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the filing of such complaint. *If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the "offer of judgment" was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly....* [Emphasis added.]

The relevant dates are as follows:

May 31, 1984—Action commenced;

November 6, 1989—CDM paid City 2.7 million;

November 29, 1989—District court entered a stipulation of judgment;

December 21, 1989—CDM makes an offer of judgment in the amount of $250,000, which Purcell rejected; and

October 16, 1990—Judgment entered by trial court for $600,000, plus interest.

It is clear enough that § 52–192a(b) of the Connecticut General Statutes applies to this case, since the plaintiff recovered an amount greater than the offer of judgment which was made. It is also clear that the 12% annual interest provided for in that section is to be added to "the amount recovered." Since the offer was filed later than 18 months from the date of filing of the complaint, the 12% interest is to be computed from the date the offer of judgment was filed. Connecticut case law also makes it clear that interest under § 52–192a(b) terminates as of the date of the final judgment. *Gionfriddo v. Avis Rent A Car System, Inc.,* 192 Conn. 301, 308, 472 A.2d 316, 320 (1984).

The issue raised in this appeal is what is "the amount recovered" to which the 12% interest is applied. Specifically, CDM contends that "the amount recovered" includes interest at 10% under Connecticut's General Statute § 37–3a in accordance with the Magistrate Judge's analysis. Purcell on the other hand agrees with the trial court, which held, "the rules of § 52–192a determine prejudgment interest, while the rules of § 37–3a determine post-judgment interest." JA199 (citing *Gionfriddo,* 192 Conn. at 308, 472 A.2d at 320). We hold that the trial court's reliance upon the *Gionfriddo* decision in this regard was incorrect.

Section 37–3a of the Connecticut General Statutes provides for interest to be awarded as "damages for the detention of money after it becomes payable." *Gionfriddo* was a personal injury case and the court acknowledged that a "personal injury claim would not ordinarily constitute a claim for the wrongful detention of money." *Id.* at 308, 472 A.2d at 320. The *Gionfriddo* court went on to hold "for such claims [personal injury], therefore, the rules of § 52–192a determine prejudgment interest, while the rules of § 37–3a determine post-judgment interest."

The case before us is a contract claim and the Magistrate Judge specifically found, as he was entitled to do, that CDM was entitled to 10% prejudgment interest on the $600,000 from November 6, 1989 until the date judgment was entered. That is the period of time that CDM was deprived of the use of the money. Awarding interest under § 37–3a in such a circumstance is a matter within the sound discretion of the trial court. *See State v. Stengel,* 192 Conn. 484, 487, 472 A.2d 350, 352 (1984); *Scribner v. O'Brien, Inc.,* 169 Conn. 389, 405–406, 363 A.2d 160, 169 (1975).

Furthermore, the interest provided for by § 52–192a(b) "is punitive in nature and authorized by legislation enacted to promote fair and reasonable compromise of litigation without trial." *Edward Denike Tree Co. v. Butter*, 21 Conn.App. 366, 369, 573 A.2d 349, 350–351 (1990). It is entirely appropriate to apply interest under § 52–192a(b) to a judgment which already includes interest in a contract case. *Id.*

Accordingly, "the amount recovered" by CDM, upon which interest accrues under § 52–192a(b), is $600,000, plus 10% interest from November 6, 1989 until October 16, 1990. Since there are 344 days from November 6, 1989 until October 16, 1990, the amount recovered is $600,000 plus [ ($600,000 × .10) × (344 ÷ 365) ] = $656,-547.95.

CDM is entitled to 12% interest under Connecticut General Statute § 52–192a(b) on that amount from December 21, 1989, the date the offer of judgment was filed, until October 16, 1990. The calculation is $656,547.95 plus [ ($656,547.95 × .12) × (299 ÷ 365) ] = $721,087.51. To this is added $350 attorney's fees to arrive at the amount of $721,437.51.

We AFFIRM the district court with a modification of the interest calculation. Purcell owes CDM $721,437.51, plus 10% interest from October 16, 1990 until the date of payment. This case is remanded for entry of a judgment consistent with this opinion.