[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
In this case, plaintiffs Mildred F. Knudsen ("Mrs. Knudsen") and her automobile liability insurer, American National Fire Insurance Company ("American National"), have sued defendants Robert P. Volpe ("Attorney Volpe"), his Hartford law firm of Howard, Kohn, Sprague FitzGerald ("Howard, Kohn"), and several of his partners at Howard, Kohn, for legal malpractice in connection With Attorney Volpe's representation of Mrs. Knudsen in the final stages of a civil lawsuit entitled Mullane v.Knudsen, CV 92-059726 S ("the underlying lawsuit"), which was tried to verdict in this Court, before Judge Walter F. Pickett, Jr. and a jury of six, from April 21-29, 1993. The gravamen of the plaintiffs' claim against these defendants, as described in their one-count amended complaint dated May 11, 1995, is that in the course of midtrial settlement discussions, Attorney Volpe incorrectly advised them that they could no longer accept and stipulate to judgment on the underlying plaintiff's $100,000 offer of judgment, which had been filed on the very eve of trial, just six days before.
The plaintiffs claim: that Attorney Volpe's advice was based on a clearly erroneous interpretation of the CT Page 14293 plaintiff's-offer-of-judgment statute, General Statutes § 52-192a; that the giving of such incorrect advice was a departure from the standard of care for civil trial attorneys; and that as a result of following such advice they have sustained substantial economic losses. According to the plaintiffs, their losses include: the difference between the $100,000 they would have paid to settle the underlying lawsuit had they accepted the offer of judgment and the much larger amount they were ultimately required to pay after the jury returned a $344,000 verdict in favor of the underlying plaintiff; all expenses they incurred to complete the trial of the underlying lawsuit and to protect their rights and interests in its aftermath; and all monies expended to recoup their alleged losses from these defendants by prosecuting this action.
The defendants have answered the plaintiffs' amended complaint, inter alia, by denying that Attorney Volpe's challenged advice was legally incorrect, denying that the giving of such advice was an act of professional negligence, and denying that by acting on that advice the plaintiffs suffered any harm. In addition, they have pleaded the special defense of comparative negligence, alleging that any losses suffered by the plaintiffs were proximately caused by American National's own negligent handling, on its own behalf and that of its insured, Mrs. Knudsen, of the investigation, supervision, review, negotiation, analysis, assessment, and/or evaluation of the underlying plaintiff's insurance claim against her. The plaintiffs have denied each allegation of the defendants' special defense.
All parties have now moved this Court for summary judgment under Sections 17-44 and 17-45 [formerly Sections 379 and 380, respectively] of the Connecticut Practice Book. The defendants, in their motion dated September 9, 1996, assert that they are entitled to judgment as a matter of law because: (1) on the facts here presented, there is no genuine issue of material fact that Attorney Volpe's advice was legally correct when given, both under the provisions of the plaintiff's-offer-of-judgment statute, General Statutes § 52-192a, and under the common law of contracts; and (2) even if Attorney Volpe's interpretation of Section 52-192a was legally incorrect, his giving of advice on the basis of that interpretation did constitute legal malpractice, for the question to which he addressed himself was unsettled, having not previously been decided by a Connecticut appellate court. CT Page 14294
The plaintiffs oppose the defendants' motion for summary judgment on several grounds, contending generally: (1) that Attorney Volpe's interpretation of Section 52-192a was clearly erroneous; and, in any event, (2) that on the facts here presented, the contested issue of professional negligence cannot be decided as a matter of law without first resolving several genuine issues of material fact. The parties have supported their respective positions on the defendants' motion with substantial legal memoranda and other materials, including affidavits and/or legal memoranda from several Connecticut attorneys who voice conflicting views as to the correctness of Attorney Volpe's interpretation of General Statutes § 52-192a, and the resulting appropriateness of his challenged advice.[1]
The plaintiffs' motion for summary judgment, dated September 10, 1996, asks this Court to rule more narrowly that the defendants' special defense of comparative professional negligence is not legally viable. On this score, the plaintiffs contend: (1) that any negligence by American National in the handling of the underlying plaintiff's insurance claim against Mrs. Knudsen did not actually or proximately cause any of the plaintiffs' complained-of economic losses; and (2) that the defendants have no competent evidence to support their special defense, because they have failed to disclose any expert witness who can offer testimony in support thereof.
The defendants oppose the plaintiffs' motion on its merits, insisting that a special defense of comparative professional negligence may properly be asserted in a legal malpractice action, and that their liability expert on the plaintiffs' claim of legal malpractice, Attorney Garrett Moore, is also an expert on insurance claims handling practices, and will testify in that capacity, in support of their special defense, at trial. On this motion as well, the parties have supported their respective positions with substantial memoranda of law.
 FACTS
American National issued an automobile liability policy to Mrs. Knudsen which was in effect on November of 1991. The policy provided that in the event a claim were made against Mrs. Knudsen, American National would be obligated to pay all costs for her defense, including attorney's fees. CT Page 14295
On or about November 18, 1991, Mrs. Knudsen was involved in an automobile collision in the parking lot of Saint Francis Parish Center in New Milford, Connecticut. As a result of the collision, Ms. K. Ellen Mullane ("Ms. Mullane" or "the underlying plaintiff") brought the above-referenced civil lawsuit, Mullanev. Knudsen, CV 92-059726 S ("the underlying lawsuit") against Mrs. Knudsen to recover damages for her personal injuries and resulting losses.
In accordance with the insurance policy it had issued to Mrs. Knudsen, American National took up her defense in the underlying lawsuit through its in-house counsel, Attorney Joseph Mulshine. Attorney Mulshine represented Mrs. Knudsen from the inception of the underlying lawsuit until approximately one month before the scheduled start of trial, when American National retained outside counsel, the defendant law firm of Howard, Kohn, Sprague FitzGerald, to take over her defense. Howard, Kohn, in turn, assigned Attorney Volpe to handle Mrs. Knudsen's case.
On April 21, 1993, the day on which jury selection was scheduled to begin, counsel for the underlying plaintiff, Attorney Charles Brower, filed and served notice upon the plaintiffs (as underlying defendants) of a plaintiff's offer of judgment in the amount of $100,000. Upon the advice of American National, Attorney Volpe orally rejected this offer on behalf of Mrs. Knudsen. Immediately after the offer was filed, a jury was selected and impaneled and evidence began. On April 27, 1993, after two days of evidence had been completed, Attorney Volpe, upon receiving further instructions from American National, initiated settlement discussions with Attorney Brower by making a verbal offer to settle the case for $75,000. The underlying plaintiff, through Attorney Brower, rejected this offer and made her own verbal counteroffer to settle the case for $120,000.
Upon learning of the underlying plaintiff's rejection of its $75,000 offer and increased demand of $120,000, American National, by its representative, Anthony Sisti, inquired of Attorney Volpe whether or not the case could still be settled by accepting the underlying plaintiff's $100,000 offer of judgment. Attorney Volpe advised Mr. Sisti that because the trial had started, the offer of judgment could no longer be accepted.
As a result of receiving Attorney Volpe's advice, American National did not direct him to accept that offer on behalf of Mrs. Knudsen. Instead, it authorized him to pay $120,000 to CT Page 14296 settle the case, but only if he could not first persuade the underlying plaintiff to accept the lesser sum of $115,000. Attorney Volpe duly communicated American National's $115,000 offer to Attorney Brower, who in turn communicated it to his client. The underlying plaintiff rejected the latter offer in disgust, then ordered her attorney to cease negotiations and try the case to verdict. Two days later, on April 29, 1993, the jury returned a $344,000 verdict for the underlying plaintiff.
 ANALYSIS
I. Standards for deciding Summary Judgment Motions
"Practice Book [§ 17-49, formerly] § 384, provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation omitted.) Doty v. Mucci, 238 Conn. 800, 805,679 A.2d 945 (1996). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp. , 233 Conn. 732, 751, 660 A.2d 810 (1995). "A summary disposition . . . should be on the evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Brackets omitted; internal quotation marks omitted.) Id. at 752.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . ." (Citation omitted.) Doty v. Mucci, supra,238 Conn. at 805. "The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Citation omitted.) Id.
II. Defendants' Claim That Attorney Volpe's Advice Was Legally Correct
The defendants' initial claim on their motion for summary judgment is that Attorney Volpe did not commit legal malpractice because the challenged advice he gave the plaintiffs was legally correct. On this score, the defendants make two independent arguments: first, that in 1993, a Connecticut civil defendant was barred from accepting a plaintiff's offer of judgment under CT Page 14297 General Statutes § 52-192a after the start of trial; and second, that even if the plaintiffs were not barred by statute from accepting the underlying plaintiff's offer of judgment at the time they sought and received his advice, they could no longer accept the offer at that time because by then, they had already rejected the offer and counter-offered to settle the case for a lesser amount. For the following reasons, the Court rejects both parts of the defendants' analysis.
 A. Interpretation of Section 52-192a
The parties recognize, as they must, that the Court's sole task in interpreting a statute is to find and enforce the intent of the legislature which passed it. Norwich v. Silverberg,200 Conn. 367, 370-71, 511 A.2d 336 (1986); State v. Kozlowski,199 Conn. 667, 673, 509 A.2d 2 (1986); Hayes v. Smith,194 Conn. 52, 57, 480 A.2d 42 (1984);State v. Delafose, 185 Conn. 517, 521,441 A.2d 158 (1981); 2A J. Sutherland, Statutory Construction (4th Ed. 1984) § 45.05. They also acknowledge that in so doing, the Court must employ the following legal analysis:
 When the words of a statute are plain and unambiguous, [a court] need look no further for interpretive guidance because [it] assume[s] that the words themselves express the intention of the legislature. Johnson v. Manson, 196 Conn. 309, 316, 493 A.2d 846b (1985), cert. denied, 474 U.S. 1063, 106 S.Ct. 813, 88 L.Ed.2d 787 (1986); Mazur v. Blum, 184 Conn. 116, 118-19, 441 A.2d 65 (1981). When [it is] confronted, however, with ambiguity in a statute, [it must] ascertain the actual intent by looking to the words of the statute itself; State v. Kozlowski, supra, 673; Dukes v. Durante, 192 Conn. 207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; State v. Kozlowski, supra, 673; DeFonce Construction Corporation v. State, 198 Conn. 185, 187, 501 A.2d 745 (1985); State v. Parmalee, 197 Conn. 158, 161, 496 A.2d 186 (1985); State v. Delafose, supra 522; and the purpose the statute is to serve. Peck v. Jacquemin, 196 Conn. 53, 64, 491 A.2d 1043 (1985); Verrastro v. Silvertsen, 188 Conn. 213, 221, 448 A.2d 1344
(1982); Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 8, 434 A.2d 293 (1980). Rhodes v. Hartford, 201 Conn. 89, 93, 513 A.2d 124 (1986).
Norwich v. Housing Authority, 216 Conn. 112, 117-18, 579 A.2d 50
CT Page 14298 (1990)
Anticipating this analysis, the defendants first argue that, as written in 1993, General Statutes § 52-192a plainly and unambiguously cut off a civil defendant's right to accept a plaintiff's offer of judgment at the start of trial. The plaintiffs agree that the 1993 version of Section 52-192a was plain and unambiguous, but they insist that its wording clearly evidences a contrary legislative intent, to wit: that any defendant who received a plaintiff's offer of judgment would have a full thirty days to accept it, even if the thirty-day acceptance period extended past the start of trial.
Section 52-192a read as follows in 1993:
 After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written "offer of judgment" signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the "offer of judgment," the defendant or his attorney may file with the clerk of the court a written "acceptance of offer of judgment". Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the "offer of judgment" is not accepted within thirty days, the "offer of judgment" shall be considered rejected and not subject to acceptance unless re-filed. Any such "offer of judgment" and any "acceptance of offer of judgment" shall be included by the clerk in the record of the case.
General Statutes § 52-192a (Rev. To 1993) (Emphasis added). The defendants base their claim as to the interpretation of the statute on the words and phrases underlined in the foregoing text. They argue: first, that the statute clearly restricts the time for filing an offer of judgment to the period "before trial;" second, that the statute requires the clerk to "enter judgment immediately" upon the defendant's filing of an acceptance of offer of judgment, regardless of what else may then be happening in the case; and third, that since the clerk's entry CT Page 14299 of judgment in the middle of trial would be an unseemly usurpation of judicial authority that the legislature could not logically have countenanced or approved, the statute must be read to require that all steps necessary to such entry of judgment occur "before trial."
The plaintiffs rightly reject the defendants' analysis for several reasons. First, they correctly note that the clerk's entry of judgment upon the defendant's mid-trial acceptance of a plaintiff's offer of judgment would not usurp judicial authority in the slightest. The statutorily contemplated entry of judgment is a purely ministerial act, to be performed without the exercise of judgment or discretion, immediately after the acceptance of offer of judgment is filed. The trial judge has notice of the pendency of any open offer of judgment when trial begins, because the offer is in the court file. It thus has notice that the trial could end abruptly if the offer of judgment is accepted, and no reason to regard the clerk's resulting entry of judgment as anything but the statutorily mandated consequence of the parties' voluntary agreement to resolve their differences short of verdict. The potential occurrence of this welcome result, which achieves finality on mutually satisfactory terms without need for further judicial involvement, provides no reason to read an unexpressed requirement into the statute that plaintiffs' offers of judgment be accepted before trial.
Second, the plaintiffs persuasively advance their own plain-meaning analysis of Section 52-192a. Under that reading, which this Court adopts, the critical language in the statute is that which expressly prescribes the mandatory time limits for taking necessary actions thereunder. The statute provides, more particularly, that a plaintiff's offer of judgment "may" be filed at any time "[a]fter commencement of [the] . . . action . . . [but] "before trial." Id. A civil action "is commenced on the date of service of the writ upon the defendant [.]" Valley Cable Vision,Inc. v. Public Utilities Commission, 175 Conn. 30, 33-34,392 A.2d 485 (1978) (Citations omitted). The period "before trial," in turn, comes to an end "at the commencement of the trial[,] and the commencement of a trial is frequently construed to mean before opening statements in a trial to a court or before impaneling the jury in a jury trial." Krawiec v. Kraft,163 Conn. 445, 448, 311 A.2d 82 (1972) (so construing the phrase "before trial," as it appears in General Statutes § 53-193 et seq., the defendant's-offer-of-judgment statutes). Read in light of the foregoing definitions, the subject statute plainly authorized a CT Page 14300 Connecticut civil plaintiff to file an offer of judgment as early as the moment at which he served his writ, but not later than the moment his jury was impaneled.
Acceptance of a plaintiff's offer of judgment, by contrast, was governed by a different portion of the statute where the phrase, "before trial," does not appear. The pertinent language, to restate it, was as follows:
 Within thirty days after being notified of the filing of the "offer of judgment," the defendant or his attorney may file with the clerk of the court a written "acceptance of offer of judgment" agreeing to a stipulation for judgment as contained in the plaintiff's offer of judgment . . . If the "offer of judgment" is not accepted within thirty days, the "offer of judgment" shall be considered rejected and not subject to 16 acceptance unless re-filed.
The distinction between this portion of the statute and that which establishes the time frame for filing offers of judgment is as crucial as it is obvious. Whereas offers of judgment were to have been filed "before trial," they need not have been accepted before trial unless the full thirty-day statutory acceptance period had already expired.
When qualifying language is used in one part of a statute but not others, the legislature is fairly and reasonably presumed to have omitted it intentionally from those parts where it is not used. Here, then, since the legislature restricted the filing of a plaintiff's offers of judgment, but not the time for accepting such an offer of judgment, to the period "before trial," the inference is obvious that the latter, unlike the former, need not in fact be filed "before trial." Moreover, since the thirty-day period for accepting a plaintiff's offers of judgment applies, on its face, to all such offers, without exception for date of filing, that period presumably applied with equal force to offers made both more and less than thirty days before the start of trial. Against this background, it is clear beyond question that under the 1993 version of General Statutes § 52-192a, a defendant could accept a plaintiff's offer of judgment at anytime within the first thirty days after being notified of its filing, whether or not that thirty-day period extended past the start of trial. CT Page 14301
Though the plain and unambiguous language of Section 52-192a
(rev. to 1993) leaves no room for statutory construction; In re:Petition of State's Attorney, Cook County, Illinois,179 Conn. 102, 107, 425 A.2d 588 (1979); both the defendants and the plaintiffs insist that use of the standard tools of construction supports their respective positions. On this score as well, the Court is persuaded that the plaintiffs are correct.
The defendants claim support for their position in the legislative history of Section 52-192a and in subsequent judicial constructions of the statute. From both sources, the defendants claim support for the proposition that the overriding purpose of the statute was to unclog Connecticut's crowded civil dockets by fostering reasonable, expeditious settlements of civil casesbefore trial. On that basis they argue that any reading of the statute which permits a defendant to accept a plaintiff's offer of judgment after trial begins is fundamentally inconsistent with the legislature's purpose for passing the statute.
The plaintiffs do not dispute the defendants' general contention that the overarching purpose of the plaintiff's-offer-of-judgment statute was to promote civil settlements, and thus to ease the mounting, years-long backlog of civil cases awaiting trial. They correctly note, however, that the only explicit mention in proceedings before the legislature of a specific purpose to foster pretrial settlements of civil cases was not made by a legislator, but by an attorney addressing the Judiciary Committee on behalf of Connecticut trial lawyers when the statute was amended in 1979.[2] They further note that nothing said by anyone before the legislature ever touched upon the topic of when a plaintiff's offers of judgment was to be accepted under the statute.
Similarly, the defendants argue that after the passage of the plaintiffs-offer-of-judgment statute, many courts have commented that the purpose of the statute is to encourage pretrial settlements. See, e.g., Camp, Dresser McKee, Inc. v.Technical Design Assoc., Inc., 937 F.2d 840, 845 (2d Cir. 1991);Paine Webber Jackson Curtis, Inc. v. Winters,22 Conn. App. 640, 651, 579 A.2d 545
(1990); Edward Denike Tree Co. v. Butler,21 Conn. App. 366, 369, 573 A.2d 349 (1990); Crowther v. GerberGarment Technology, Inc., 8 Conn. App. 254, 267, 513 A.2d 144
(1986). The plaintiffs rightly respond to this argument, however, by pointing out that each of the comments in question CT Page 14302 was a single line of dictum, voiced in a case where the question presented had nothing to do with when a plaintiff's offer of judgment could lawfully be accepted. It is, of course, axiomatic that a case resolves only those issues explicitly decided in it. See, e.g, Connecticut Light Power Co. v. Castle, 179 Conn. 415,416, 426 A.2d 1324 (1980); State v. DellaCamera, 166 Conn. 557,561, 353 A.2d 750 (1974); State v. Darwin, 161 Conn. 413, 421-22,288 A.2d 422 (1971). Therefore, since none of the cited cases cited by the defendants dealt with the issue now before this Court, none adds weight to the defendants' argument on that issue.
The plaintiffs' countering arguments, by contrast, are very weighty indeed. First, the plaintiffs argue that the language of Section 52-192a must be read in light of the greater statutory context in which it was enacted. In particular, the rules and restrictions set forth in the statute must be compared to those set forth in the defendant's-offer-of-judgment statutes, General Statutes §§ 52-193-52-195, which had been a part of Connecticut statutory law for over twenty years before the enactment of Section 52-192a in 1976.
In 1976, General Statutes § 52-193 authorized civil defendants to file offers of judgment in the following words:
 In any action or contract, or for the recovery of money only, the defendant may before trial file with the clerk of the court a written notice signed by him or his attorney, directed to the plaintiff or his attorney, offering to allow the plaintiff to take judgment for the sum named in such notice.
Id. (Emphasis added). The first two sentences of Section 52-192a
were clearly based on the text of Section 52-193, as it was written in 1976. They limited the time for filing a defendant's offer of judgment to the period "before trial".
In that same time frame, the time limit for accepting a defendant's offer of judgment was set forth in General Statutes §§ 52-194 and 52-195. Section 52-194 then read as follows:
In any action the plaintiff may, within ten days after being notified by the defendant of the filing of such offer, file with the clerk of the court a written acceptance of such offer signed by himself or his attorney. Such written acceptance CT Page 14303 being filed, the court shall render judgment against the defendant as upon default for the sum so named and for the costs accrued at the time of the defendant's giving the plaintiff notice of such offer. No trial shall be postponed because the period within which the plaintiff may accept such offer has not expired, except at the discretion of such court.
(Emphasis added). The relevant portion of Section 52-195 provided
 If the plaintiff does not, within said time and before the commencement of the trial, file his notice of acceptance, such offer shall be deemed to be withdrawn and shall not be given in evidence; and the plaintiff, unless he recovers more than the sum named in such offer, with interest from its date, shall recover no costs accruing after he received notice of the filing of such offer, but shall pay the defendant's costs accruing after said time.
(Emphasis added).
A simple comparison of the foregoing provisions with that portion of Section 52-192a which establishes the time for accepting a plaintiff's offer of judgment reveals significant differences between them. Whereas the time for accepting a defendant's offer of judgment was expressly limited to the period "before the commencement of the trial," the time for accepting a plaintiff's offer of judgment, under Section 52-192a, was not so limited. Logically, the omission of this requirement from Section 52-192a was intentional, suggesting that no such requirement was sought to be imposed thereby.[3]
A second significant difference between the earlier defendant's-offer-of-judgment statutes and the later statute here at issue is the omission from the latter of the following language at the end of Section 52-194:
 No trial may be postponed because the period within which the plaintiff may accept the offer has not expired, except at the discretion of the court.
This provision was a necessary addition to the defendant's-offer-of-judgment statutes, because the right to accept an offer thereunder legally expired when trial began. If a defendant filed a belated offer of judgment, which a plaintiff wished but lacked sufficient time to consider CT Page 14304 seriously before the impending start of trial, the only way to preserve the plaintiff's power of accepting it, and thus to avoid a potentially unnecessary trial, was to postpone the start of trial. The absence of such a provision in Section 52-192a, by contrast, gives clear evidence that no postponement of trial would ever be necessary to ensure the continuing acceptability of a plaintiff's offer of judgment. Such an offer, unlike a defendant's offer of judgment, would not expire at the "commencement of the trial."
In conclusion, though the Court has no need to resort to construction to ascertain the plain meaning of Section 52-192a, all evidence it finds in the relevant contextual and historical materials supports its textual analysis of the statute.
A final argument advanced by the plaintiffs in support of their reading of the statute is that that reading is fully consistent with the legislature's own understanding of the statute, as expressed when it passed clarifying legislation amending the statute in 1994. In Public Act 94-20, the legislature amended Section 52-192a to limit the time for accepting a plaintiff's offer of judgment until "the rendering of a verdict by the jury or an award by the court[.]" Representative Radcliffe, in explaining the situation that led the Judiciary Committee to recommend the bill, said that
 [u]nder existing law, as the chairman indicated, there are times when a verdict might be rendered by a jury. The verdict is accepted by the court and because an offer of judgment may be filed fewer than 30 days prior to the entry of a verdict, the defendant then has an option of either accepting the jury verdict, which may in fact be higher than the offer of judgment or accepting the offer of judgment after the verdict has in fact been rendered because it would still be within that 30 day period, and basically what this bill says is that one must make an election.
37 H.R. Proc., Pt. 3, 1994 Sess., p. 786. Representative Radcliffe's comment clearly illustrates the legislature's understanding, barely one year after the trial of the underlying lawsuit that under then-existing law, a plaintiff's offer of judgment could lawfully be accepted at any time within the first thirty days after notice of its filing was received, even if the trial was already over and a verdict had been rendered. CT Page 14305
In conclusion, the Court is persuaded that the 1993 version of General Statutes § 52-192a admitted of one and only one reasonable interpretation with respect to the acceptability of a plaintiff's offer of judgment after trial began. Such an offer of judgment remained valid and acceptable for a full thirty days after the plaintiff received notice of its filing, notwithstanding the commencement, since the date of filing, of the trial.
 B. Applicability of the Common Law of Contracts to Statutory Offers of Judgment
The defendants' second argument in support of their claim that Attorney Volpe's challenged advice was legally correct is that even if the plaintiffs were not barred by statute from accepting the offer of judgment, they could no longer accept it under the common law of contracts, for by the time they requested and received his advice, they had already rejected the offer of judgment by orally refusing to accept it and counter-offering to settle the case for a lesser sum. This argument is based on the supposition, unsupported by any cited authority, that the manner of invoking and responding to the invocation of this purely statutory remedy, which did not exist at common law, is governed by the common law of contracts. In fact, it is not.[4]
Despite their superficial similarity, a statutory offer of judgment and a common-law offer to enter into a contract are two very different things, each with strikingly different legal consequences. Whereas an offer to enter into a contract remains open for acceptance for only so long as the offeror permits, an offer of judgment stays open, under the statute which created it, until the statutory time for accepting it expires. Moreover, whereas an offer to enter into a contract is subject to acceptance in any manner specified therein, or in the absence of such a specification, in any manner that clearly communicates agreement to all of its terms, an offer of judgment can only be accepted in the manner prescribed by law. That manner, as set forth in Section 52-192a (rev. to 1993), was the timely filing, with the clerk of the court, of a written acceptance of offer of judgment, agreeing to a stipulation for judgment as contained in plaintiff's offer of judgment. If an offer of judgment could lawfully be accepted in any other manner, the statutory provisions relating to acceptance of offers of judgment would be without purpose, and the clerk's ability to ascertain the fact of acceptance from the face of the record, and on that basis to CT Page 14306 enter judgment immediately, would be fatally compromised.
By the same token, though a common-law offer to enter into a contract can be rejected by any means that effectively communicates an unwillingness to agree to all of its terms, an offer of judgment can only be rejected in the manner prescribed by law. Again, were it otherwise, the clerk's ability to enter judgment immediately upon the filing of an acceptance of offer of judgment would be fatally compromised, for in that event, the clerk could not ascertain from the face of the record whether the right to accept the offer had previously been waived.
Moreover, since rejection of a plaintiff's offer of judgment can lead to serious punitive consequences for the defendant, the statute giving rise to those consequences must be strictly construed against the party seeking to invoke them. Any defendant who refuses to accept a plaintiff's offer of judgment can later be required to pay interest on the entire amount of a judgment against him if the amount of that judgment equals or exceeds the amount of the offer of judgment. To invoke this potentially heavy penalty, the plaintiff must demonstrate both that he timely filed his offer of judgment and that the defendant fail to accept it in the time and manner prescribed by law. The governing statute specifically states that,
 [w]ithin thirty days after being notified of the filing of the "offer of judgment," the defendant or his attorney may file with the clerk of the court a written "acceptance of offer of judgment" agreeing to a stipulation for judgment as contained in the plaintiff's "offer of judgment." Upon such filing, the court shall render judgment forthwith on the stipulation.
These words clearly establish that regardless of how the defendant may initially have reacted upon receiving the offer, his right to accept it remains open for a full thirty days. So written, the statute encourages defendants to think seriously about the offer, to discuss it carefully with the plaintiffs and among themselves, and otherwise seriously to consider its possible benefits before rejecting it. It literally refuses to take "no" for an answer until the full statutory period has expired.
The Court therefore concludes that whether or not a defendant, upon receiving a plaintiff's offer of judgment, engages in conduct that might appropriately be taken to reject, CT Page 14307 and thereby nullify, a common-law contract offer, such behavior does not make him ineligible to accept the offer of judgment, as long as he does so within the time and in the manner prescribed by law. Attorney Volpe was incorrect when he advised his client, through her insurer's representative, to the contrary.
III. Defendants' Claim That Even If Attorney Volpe's Advice Was Not Legally Correct, The Giving of That Advice Did Not Constitute Legal Malpractice As A Matter of Law
The defendants further argue that even if Attorney Volpe's interpretation of General Statutes § 52-192 (rev. to 1993) was legally incorrect, his giving of advice on the basis of that interpretation did not constitute legal malpractice, because the subject matter of his interpretation and resulting advice was an unsettled proposition of law on which competent attorneys could reasonably have reached the same conclusion. They base this argument principally on the general rule of other jurisdictions, that "there is no liability for a judgmental error regarding a proposition of law `which has not been settled by a court of last resort in the State and on which reasonable doubt may be entertained by well-informed lawyers.'" R. Mallen J. Smith, LegalMalpractice (4th Ed. 1996), § 17.7.
Applying the above-described rule to the case at bar, the defendants make two essential claims: first, that in 1993, the question whether or not a Connecticut civil defendant was statutorily barred from accepting a plaintiff's offer of judgment after the start of trial was an unsettled proposition of law, which had not been decided by any Connecticut appellate court; and second, that in that time frame, well-informed Connecticut civil trial attorneys, including their two expert affiants, Attorneys Garrett Moore and Charles Brower, did actually and reasonably share Attorney Volpe's view as to how that question should be answered. Here, then, conclude the defendants, Attorney Volpe's giving of advice on the basis of that interpretation did not constitute malpractice as a matter of law.
The plaintiffs do not respond to this portion of the defendants' motion by contesting the appropriateness of the rule on which the defendants rely. Instead, they advert to our State's most basic rules governing the decision of summary-judgment motions, insisting that a straightforward application of those rules must result in the denial of the defendants' motion. CT Page 14308
To prevail on this motion, note the plaintiffs, the defendants must establish that they are entitled to judgment as a matter of law. To meet that burden, the defendants must show that when all of the evidence submitted on the motion is considered in the light most favorable to the plaintiffs, there is no genuine issue as to one or more facts on which their right to judgment legally depends.
In this case, note the plaintiffs, the defendants have attempted to prove that Attorney Volpe's interpretation of the subject statute was reasonable because two well regarded Connecticut lawyers have averred that they agree with that interpretation. However, such testimony, they rightly argue, at most raises a genuine issue as to the reasonableness of the challenged statutory interpretation; it is not so presumptively powerful or believable as to foreclose further inquiry on that subject or eliminate any genuine issue thereon. Plainly, despite their reputations or qualifications, the defendants' experts could be disbelieved or discredited by the jury. Moreover, their testimony could be rejected or discounted by the jury in light of the conflicting testimony of the plaintiffs' experts, who categorically reject Attorney Volpe's statutory interpretation as both erroneous and unreasonable.[5] In short, the proffered testimony is manifestly insufficient to establish that the defendants are entitled to judgment as a matter of law.
The defendants also argue that the law governing the question put to Attorney Volpe was so inherently ambiguous or uncertain at the time he attempted to answer it that he cannot be found liable for any error he may have made in giving his answer, despite the conclusions of the plaintiffs' legal experts to the contrary. Procedurally, the Court agrees with the defendants that it can lawfully decide if the text of a statute is so ambiguous as to require construction, and if so, whether a proposed construction of an ambiguous text could reasonably have been shared by a competent attorney in the relevant time frame. Courts routinely make these decisions when interpreting statutes, and in so doing, are not expected or required to heed expert opinion.
Substantively, however, the Court's willingness to make that decision on its own is of no aid to these defendants, for the Court has already ruled that the plain language of the subject statute admits of one and only one reasonable interpretation with respect to the acceptability of a plaintiff's offer of judgment CT Page 14309 after the start of trial. See Part II of this Memorandum of Decision, supra at 26. That interpretation, which directly contradicts the challenged interpretation and advice of Attorney Volpe, is that a plaintiff's offer of judgment remained valid and acceptable for a full thirty days after the plaintiff received notice of its filing, even if trial had already begun. Id.
In conclusion, the defendants have failed to meet their burden of proving that there is no genuine issue of fact as to the reasonableness of Attorney Volpe's challenged interpretation and advice. That issue, if not definitively resolved in favor of the plaintiffs, is at the very least an open issue that must be decided at trial.
IV. Plaintiffs' Claim That They Are Entitled to Summary Judgment On The Defendants' Special Defense Of Comparative Negligence
Though the parties have spent considerable time and energy briefing and arguing the merits of the defendants' claim of comparative negligence, the Court's disposition of the plaintiffs' motion for summary judgment is not dependent upon any of the substantive arguments they have advanced. Instead, the Court's decision necessarily turns on a threshold matter to which neither side has addressed itself, to wit: the inappropriateness of using a summary judgment motion to reject a special defense.
Summary judgment is a procedure "designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried . . . It is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." (Citations omitted; internal quotation marks omitted.) Mac's CarCity, Inc. v. American National Bank, 205 Conn. 255, 261,532 A.2d 1302. As its name implies, it helps the court to "dispose of cases," id., not by surgically removing selected issues from cases that must still be tried, in the manner of a motion to strike, but by finally resolving entire cases or causes of action by the entry of judgment. Hence, the court's task in deciding a motion for summary judgment is "confined to an examination of the pleadings and affidavits to determine whether they show that there is no genuine issue as to any material fact and that the defendants [are] entitled to judgment as a matter of law." Yanowv. Teal Industries, Inc., 178 Conn. 262, 269, 422 A.2d 311
(1979). "The test for summary judgment is whether the moving party would be entitled to a directed verdict on the same facts." CT Page 14310Wilson v. New Haven, 213 Conn. 277, 279-80, 567 A.2d 829 (1989).
A special defense is not an independent action on which a party can obtain a judgment. Instead, it is a set of facts which, if proved, entitle the defendant to avoid or reduce his liability to the plaintiff if the plaintiff proves the allegations of the pleading to which the special defense is interposed. Not surprisingly, then, our rules of practice do not provide that summary judgment procedure is available to challenge the viability of a special defense; see Practice Book § 17-44
(formerly § 379); and "[a] number of decisions have held that th[ese] rule[s] do not permit a plaintiff to obtain summary judgment on a special defense." 1 Moller Horton, Connecticut Practice (3d Ed. 1998 Supp. ), p. 322 (Citing Smith v. NationalGrange Mutual Ins. Co., 17 CONN. L. RPTR. 523 (1996); Bycoski v.Gagne, 12 CONN. L. RPTR. 13, 1994 WL 403675 (1984); Granetti v.National Grange Insurance, 11 CONN. L. RPTR. 234, 1994 WL 86388
(1994); Marieno v. Nicotra Properties, 10 CONN. L. RPTR. 373,1993 WL 481147 (1993); Benjamin v. Nunes, 9 CONN. L. RPTR. 143,1993 WL 182384 (1993)).
It is true, of course, that a defendant can demonstrate his entitlement to summary judgment based on the unquestioned legal viability of a special defense. See, e.g., Burns v. HartfordHospital, 192 Conn. 451, 455-56, A.2d (1984) (upholding the granting of summary judgment where there was no genuine issue of material fact as to the legal sufficiency of the defendant's special defense under the applicable statute of limitations).
Similarly, a plaintiff can move for summary judgment on grounds that the defendant's special defense is legally untenable if he also proves that there is a genuine issue of material fact as to any of the allegations of his own complaint. See, e.g.,Mechanics Savings Bank v. Walker, 14 Conn. L. Trib. 129,1995 WL 118401 (1995); Source One v. Dziurzynski, 17 CONN. L. RPTR. 29
(1996); Bank of Boston Connecticut v. Scott Real Estate, Inc.,11 CONN. L. RPTR. 612, 1994 WL 263827 (1994), affirmed,40 Conn. App. 616, 673 A.2d 558 (1996), cert. denied, 237 Conn. 912,675 A.2d 884 (1996).
In sum, matters of special defense can be considered on a motion for summary judgment when, and only when, the non existence of any genuine issue of material fact with respect to them entitles the moving party to judgment as a matter of law. CT Page 14311
In this case, the defendants have denied each and every material allegation of the plaintiffs' complaint. Hence, to establish their entitlement to summary judgment, the plaintiffs must plead and prove not only that there is no genuine issue of material fact as to the defendants' special defense of comparative negligence, but also that there is no such genuine issue as to each contested element of its legal malpractice claim. Having failed to plead or submit proof of such a claim, its motion for summary judgment must be denied.
MICHAEL R. SHELDON, J.